## STATE OF CONNECTICUT *v.* MICHAEL CUTRO
### (13315)

LANDAU, SPEAR and FREEDMAN, Js.

Argued January 6—decision released April 18, 1995

*Joseph E. Dimyan,* with whom, on the brief, was *Melinda S. Monson,* for the appellant (defendant).

*Leah Hawley,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Catherine C. Brannelly,* assistant state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of public indecency in violation of General Statutes § 53a-186,[1] and risk of injury to a child in violation of General Statutes § 53-21.[2] The defendant argues that the state failed to establish beyond a reasonable doubt the necessary elements and the required nexus between his actions and the victim in support of a conviction for each of these crimes. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-186 (a) provides in pertinent part: "A person is guilty of public indecency when he performs any of the following acts in a public place . . . (2) a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person . . . . For the purposes of this section, 'public place' means any place where the conduct may reasonably be expected to be viewed by others."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

The jury reasonably could have found the following facts. On September 11, 1992, at approximately 9:15 p.m., S, then seventeen years of age, and her sister, D, the victim, then fourteen years of age, went shopping at the Danbury Fair Mall.[3] They parked near the merchandise pickup area at Sears and entered the mall through Sears. Upon entering Sears, S noticed a man at the snack counter whom she recognized. D also recognized the man, later identified as the defendant, from prior trips to the mall. The defendant said "Hello ladies" to S and D. S and D were in the mall approximately ten minutes and left when the mall closed at 9:30 p.m. The defendant walked behind S and D and passed them as they exited the mall. He also turned around and looked at them.

Once S was in her car in the parking lot, she observed the defendant in a car that was parked three cars away from hers. The area where her car was parked had lights all around and, because the parking lot is on a hill, S was able to look down on the defendant. From inside her car, S noticed the defendant sitting inside his car, shaking back and forth as if having a seizure. His hand was shaking below his chest. D also observed the defendant moving back and forth with his head back and his mouth open, but she did not know what he was doing. S observed the defendant for approximately ten seconds. She then got out of her car and walked back toward the mall to get security because she "knew what he was doing." D remained in the car and waited while S went to get security.

S told Richard DeMerell, a security supervisor at the mall, what she had seen and DeMerell walked to the defendant's car. When DeMerell approached the vehicle, he observed a male who was "nude from the waist

---

[3] In accordance with General Statutes § 54-86e, the names of the minor victim and her sister will not be used.

to the knees and was masturbating." The motor was running, the parking lights were on and the instrument panel in the defendant's car was fully illuminated. DeMerell instructed the defendant to turn off the ignition, drop the keys out the window, pull up his pants and put his hands on the steering wheel. The defendant stated that what he was doing was natural and that he did not see anything wrong with his actions. DeMerell then called the Danbury police for assistance and the defendant was subsequently placed under arrest by Officer Anthony Maher.

At the close of the state's case, the defendant made an oral motion for a directed verdict of not guilty as to both counts, which the court denied. The next day, prior to closing arguments, the defendant filed a motion for a directed verdict of not guilty. The court reserved judgment on the motion and, after counsel made closing arguments, denied the motion. The jury returned a verdict of guilty of public indecency in violation of § 53a-186 (a) (2) and risk of injury to a child in violation of § 53-21. Following the return of the verdict, the defendant proffered an oral motion for a judgment of acquittal notwithstanding the verdict, which the court denied. The court subsequently denied the defendant's written motion to set aside the verdict and for a directed verdict of not guilty.

I

The defendant first argues that the state failed to establish beyond a reasonable doubt the necessary elements and the required nexus between his actions and the victim in support of a conviction for the crime of risk of injury to a child. "In reviewing a sufficiency of the evidence claim, this court first reviews the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury." (Internal quota-

tion marks omitted.) *State* v. *Szymkiewicz*, 36 Conn. App. 625, 627, 652 A.2d 523 (1995). "The court then determines whether, on the facts thus established and the inferences drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." Id.

Pursuant to General Statutes § 53-21, "[a]ny person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child" shall be punished. The statute thus proscribes two general types of behavior: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Citation omitted.) *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963); *State* v. *Erzen*, 29 Conn. App. 591, 594, 617 A.2d 177 (1992). The state concedes that there was no evidence to support a conviction based on the second section of the statute;[4] we

---

[4] In its brief, the state concedes that although there was insufficient evidence to support a conviction based on the second section of the statute, the trial court improperly instructed on both alternatives. The state argues, however, that since the defendant requested the charge, and neither excepted to the charge as given nor raised a challenge to the charge on appeal, this claim should not be reviewed by this court. In his reply brief, the defendant agrees that this claim should not be reviewed by this court, not because he did not preserve it, but because the evidence was insufficient to convict him of the offense charged, regardless of the instructions to the jury.

Alternatively, the defendant argues that this claim should be reviewed under *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the instruction resulted in a deprivation of a fundamental constitutional right and a fair trial. In *State* v. *Kulmac*, 230 Conn. 43, 73, 644 A.2d 887 (1994), how-

will therefore limit our discussion to the first section of the statute, under which "it is not necessary, nor have the courts required, that a defendant touch any part of the victim's body. . . . Rather, the creation of a prohibited situation is sufficient to breach the statute." *State* v. *Erzen*, supra, 594–95.

The defendant argues that he did not wilfully or unlawfully cause or permit a child under the age of sixteen to be placed in a situation where her morals were likely to be impaired. In *State* v. *Torrice*, 20 Conn. App. 75, 81, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989), we stated that the court properly instructed the jury, pursuant to § 53-21, that to convict the defendant it must find "that he acted wilfully and 'that he either intended the resulting injury to the victim, or he knew that the injury would occur, or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences.' " Although *Torrice* involved behavior prohibited by the second section of § 53-21, we find that the standard evinced therein is applicable to an alleged violation of the first section of the statute.[5] Applying this standard,

ever, the Supreme Court noted that although it is improper to submit to the jury a method of committing the crime that is not supported by the evidence, any such error is not constitutional in nature. We therefore decline to conduct an *Evans-Golding* review of this unpreserved, nonconstitutional claim.

The defendant also argues that this claim should be reviewed as plain error pursuant to Practice Book § 4185. Plain error review "is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Cardany*, 35 Conn. App. 728, 734, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 822 (1994). In this case, the actions of the trial court did not rise to the level of plain error. We thus decline to review this claim under the plain error doctrine.

[5] In his request to charge, the defendant asked the trial court to deliver the following charge, which was in fact delivered by the court: "The first element is that the defendant acted wilfully or unlawfully. The word 'wilful' means that the defendant acted either intentionally, in the sense that

we conclude, on the basis of the evidence presented at trial, that the jury reasonably could have found that the defendant acted wilfully and that his conduct was of such a character that it demonstrated a reckless disregard of the consequences.

The defendant also argues, citing *State* v. *Tirado*, 21 Conn. App. 449, 574 A.2d 252, cert. denied, 215 Conn. 816, 576 A.2d 449 (1990), and *State* v. *Erzen*, supra, 29 Conn. App. 591, that the fact pattern in this case does not fall within the purview of the circumstances contemplated by § 53-21 because those cases require that he exhibit a pattern of conduct before he may be convicted of violating § 53-21. We disagree with the defendant's interpretation of *Tirado* and *Erzen*, and conclude that, under the facts and circumstances of this case, the defendant created a situation likely to impair the morals of a child.

In *State* v. *Tirado*, supra, 21 Conn. App. 455, the defendant was charged under the first part of § 53-21 with "wilfully or unlawfully caus[ing] or permitt[ing] 'a child under the age of sixteen to be placed in such a situation that her morals were likely to be impaired by [the defendant's] kissing the victim, exposing himself in front of the victim and requesting her to engage in sexual contact.' " The defendant in *Tirado* argued that his conviction could not stand because there was evidence of only one incident of kissing, and, pursuant to *State* v. *Schriver*, 207 Conn. 456, 542 A.2d 686 (1988), kissing alone cannot constitute a violation of § 53-21. *State* v. *Tirado,* supra, 454. In rejecting this

his conduct was voluntary and not inadvertent, and that he either intended the resulting injury to the victim or knew that the injury would occur; or that his conduct was of such a character that it demonstrated a reckless disregard of the consequences. Thus, wilful misconduct is either intentional misconduct, which is done purposely and with knowledge of its likely consequences, or it is misconduct which, even if it is not intentional, demonstrates a reckless disregard of its likely consequences. The word 'unlawfully' simply means that the defendant acted without the legal right to do so."

argument, we stated: "It is clear that the allegation that the defendant kissed the victim was not meant to provide the sole basis for a conviction under the first count, but was intended to be part of the state's allegation that there was a pattern of sexual conduct. That pattern also included the defendant exposing himself to the victim and requesting her to engage in sexual contact with him." Id., 455. In *State* v. *Erzen*, supra, 29 Conn. App. 591, the defendant lured two children into a secluded area, asked them to unzip his trousers, exposed himself to them, and touched his penis in front of them. We stated in *Erzen* that "[i]t is this pattern of lewd and sexual conduct that clearly demonstrates that the defendant violated § 53-21." Id., 596.

Although the defendants in *Tirado* and *Erzen* embarked on patterns of lewd and sexual conduct, those cases do not stand for the proposition that such a pattern was required in order to sustain a conviction under § 53-21. Moreover, the defendant in *Erzen* argued that his actions were isolated in nature and therefore were not likely to impair the morals of the minor victims. In *Erzen*, we rejected the defendant's claim, declining "to set out a bright line rule requiring a specific or minimum number of occurrences before a person can be charged with impairing the morals of a minor. In a particular situation, one instance is enough." Id., 597. We conclude, under the circumstances of this case, that the defendant created a situation that is prohibited by § 53-21.

Finally, the defendant argues that the minor victim's morals were not likely to be impaired given that she did not know what the defendant was doing. We disagree.

In *State* v. *Laracuente*, 205 Conn. 515, 521, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988), the defendant argued that the

evidence was insufficient to support his conviction under the second section of § 53-21 because the child was asleep when the act was committed. The Supreme Court rejected this argument, concluding that "[i]t was not necessary for the state to prove the child's awareness of the act." Id., 523. As we stated in *State* v. *Sullivan*, 11 Conn. App. 80, 91, 525 A.2d 1353 (1987), "[t]he gist of General Statutes § 53-21 is not conduct which results in the *actual* impairment of morals. . . . Rather, the gist is conduct which is *likely* to impair the morals of a child under the age of sixteen." (Citations omitted; emphasis added.) See also *State* v. *Apostle*, 8 Conn. App. 216, 243, 512 A.2d 947 (1986). We therefore reject the defendant's argument that the victim's morals were not likely to be impaired because she did not know what the defendant was doing.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant was guilty beyond a reasonable doubt of risk of injury to a child in violation of § 53-21.

## II

The defendant next argues that the state failed to establish beyond a reasonable doubt the necessary elements and the required nexus in support of a conviction for the crime of public indecency. As with the risk of injury claim, we will review the evidence presented at trial, construed in the light most favorable to sustaining the facts found by the jury, and then determine whether the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. See *State* v. *Szymkiewicz,* supra, 36 Conn. App. 627.

Pursuant to General Statutes § 53a-186 (a) (2), a person is guilty of public indecency when he performs, in a public place, "a lewd exposure of the body with intent

to arouse or to satisfy the sexual desire of the person." The statute goes on to define "public place" as "any place where the conduct may reasonably be expected to be viewed by others." The defendant argues that he did not perform the alleged act in a "public place" as that term is defined in the statute. The defendant bases this argument on several factors. He argues that the alleged incident occurred between 9:15 and 9:30 p.m. and that the parking lot was lighted by a street lamp. He also relies on the fact that there were no other people around and that three cars were between the victim's car and his car, and that the victim was viewing the defendant's actions through seven car windows.

We conclude, however, that the conduct at issue occurred in a "public place" as that term is used in the statute. In *State* v. *Vega*, 38 Conn. Sup. 313, 314, 444 A.2d 927 (1982),[6] after the victim got out of her vehicle, she heard a loud knocking and observed the defendant standing in the window of his apartment, which was about seven feet above ground level. The defendant was naked and visible from the knees up, holding his penis and smiling. The defendant argued that no evidence was adduced at trial to show that the window in which he was standing was a "public place" under the statute. The court rejected the defendant's argument, stating that "the jury had before it sufficient evidence from which it could conclude that the defendant's apartment window was a place where the defendant's conduct could reasonably be expected to be viewed by others." Id., 315. Similarly, in the present case, the jury had before it sufficient evidence from which it could con-

---

[6] We note that *Vega* was decided by the Appellate Session of the Superior Court. While that was not a constitutional court and we are not bound by its decisions; *State* v. *Johnson*, 28 Conn. App. 708, 716 n.5, 613 A.2d 1344 (1992), aff'd, 227 Conn. 534, 630 A.2d 1059 (1993); it is useful for our discussion of what constitutes a public place under § 53a-186.

clude that the defendant's car, parked in the parking lot of the Danbury Fair Mall, was a place where his conduct could reasonably be expected to be viewed by others. We, therefore, cannot say that the jury improperly concluded that the defendant's conduct occurred in a "public place" under the statute.

Finally, the defendant argues that he did not perform a lewd exposure of his body with the intent to arouse or to satisfy his sexual desire. Specifically, he argues that the evidence did not establish that he acted wantonly or in reckless disregard of the rights of others. A showing of wantonness or reckless disregard, while required under General Statutes (Rev. to 1968) § 53-220, the predecessor to § 53a-186, is not required under § 53a-186. What is required is that the defendant had the "intent to arouse or to satisfy the sexual desire of the [defendant]." As the court stated in *State* v. *Vega*, supra, 38 Conn. Sup. 315, "[i]ntent is a mental process which ordinarily may be proven only by circumstantial evidence. . . . The intent of the actor is a question for the trier of fact, and the conclusions of a jury must stand unless they are unreasonable." (Citation omitted.) In the present case, we cannot say that the jury's conclusion that the defendant intended to arouse or satisfy his sexual desire was unreasonable.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant was guilty beyond a reasonable doubt of public indecency in violation of § 53a-186 (a) (2).

The judgment is affirmed.

In this opinion the other judges concurred.