STATE OF CONNECTICUT *v.* PIERRE STEWART
(AC 22465)

Dranginis, Flynn and West, Js.

Argued March 25—officially released June 10, 2003

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Mary Rose Palmese*, supervisory assistant state's attorney, and *Tracey Cass*, *Nicole Christie*, *David Nelson*, *Alison Thomas* and *Julie Slayton*, law student interns, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Pierre Stewart, appeals from the judgment of conviction, rendered after a jury trial, of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] On appeal, the defendant claims that (1) the trial court improperly denied his motion for a judgment of acquittal because the preponderance of the evidence

---

[1] The defendant also was charged with possession of narcotics in violation of General Statutes § 21a-279. At the conclusion of the trial, the defendant requested, pursuant to Practice Book § 42-40, a judgment of acquittal on that count. The court granted the motion, finding that the defendant had showed that he possessed Percocet legally.

showed that he was dependent on drugs at the time of the charged offense and (2) his conviction for violating § 21a-278 (b) is invalid because the statutory definitions for drug dependence are void for vagueness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of August 27, 1999, members of the midstate narcotics task force, after receiving information that drug activity was occurring at the Wayside Motel in Berlin, set up a surveillance team to observe the motel and a nearby pay telephone located near Centerfold's Cafe. While watching the area, detectives observed the defendant use the telephone, return to his motel room and then return to the telephone a short time later. On the basis of their experience, the detectives believed that the defendant was involved in the sale of narcotics.

While the defendant was on the telephone the second time, an undercover detective approached him. The detective told the defendant that he needed to use the telephone. When the defendant hung up the telephone, the detective pretended to make a telephone call. Upon finishing the call, the detective slammed the telephone down and angrily stated that he "missed him." The defendant asked the detective what he needed, and the detective replied that he was looking for smoke, a reference to marijuana. The defendant indicated that he did not have any marijuana, but that he had pills. The detective stated that he did not use pills, but that he knew somebody who did. The defendant told the detective to meet him at his motel room in five minutes. The detective went to the defendant's room and purchased four Percocet pills for $20 from the defendant. The defendant subsequently was arrested on September 3, 1999, pursuant to an arrest warrant. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly denied his motion for a judgment of acquittal because the preponderance of the evidence showed that he was dependent on drugs, that is, prescribed Percocet, at the time of the charged offense. The crux of the defendant's claim is that when the legislature amended the definition of drug dependency in our statutes and deleted from the definition the explicit exclusion of individuals taking prescribed narcotics, the legislature intended to define such persons as per se drug-dependent. We disagree.

The defendant's claim initially presents a question of statutory construction. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. . . .

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose

or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577, 816 A.2d 562 (2003) (en banc).

The defendant was convicted of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). Section 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . ." The defendant's claim rests on whether he established that he was a "drug-dependent person" on August 27, 1999, thus negating the five year mandatory minimum sentence that is set forth in § 21a-278 (b).

Prior to 1997, our statutes defined a "drug-dependent person" as "any person who has developed a state of psychic or physical dependence, or both, upon a controlled substance following administration of that substance upon a repeated periodic or continuous basis. No person shall be classified as drug dependent who is dependent (A) upon a morphine-type substance as an incident to current medical treatment of a demonstrable physical disorder other than drug dependence, or (B) upon amphetamine-type, ataractic, barbiturate-type, hallucinogenic or other stimulant and depressant substances as an incident to current medical treatment of a demonstrable physical or psychological disorder, or both, other than drug dependence . . . ." General Statutes (Rev. to 1997) § 21a-240 (19).

In 1997, our legislature amended the statutory definition of a "drug-dependent person." In its new formulation, a "drug-dependent person" is defined as "a person

who has a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ." General Statutes § 21a-240 (19). It does not, in its amended form, no longer automatically exclude from the definition of "drug-dependent person" those who are dependent based on prescribed drugs taken as part of medical treatment. The defendant contends that the legislature's amended definition of a "drug-dependent person" reveals that the legislature intended to classify all individuals who were medically dependent on a prescribed narcotic as a "drug-dependent person."

The statutory language in this case is clear. Section 21a-240 (19) clearly defines a drug-dependent person as one who is dependent on drugs *as that term is defined* in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. Nowhere in the statutory definition is there any indication that the legislature intended to classify all those individuals who are dependent on prescribed narcotics as "drug-dependent," unless they also meet the criteria in the manual.

Additionally, the legislative history does not support the defendant's reading of the statute. While the bill seeking to amend the definition of drug dependence was before the public health committee, Thomas Kirk, the deputy commissioner for the department of mental health and addiction services, and David Biklen, the executive director of the Connecticut law revision commission, testified that the purpose underlying the amended definition was to "bring that definition up to date into what is the current accepted models of drug dependence." Conn. Joint Standing Committee Hearings, Public Health, Pt. 6, 1997 Sess., p. 1931, remarks of David Biklen, executive director, Connecticut law revision commission.

During debate on the bill before the House of Representatives, Representative Ellen Scalettar, in response to an inquiry from Representative Philip F. Prelli, stated that the change in the statutory language was to update the definition to "correspond to the generally accepted definition as it's used in places where [the department of mental health and addiction services] would have to make reference to coordinate the definition." 40 H.R. Proc., Pt. 18, 1997 Sess., p. 6573, remarks of Representative Ellen Scalettar. Therefore, the debate before the public health committee and the House of Representatives relating to the changed definition reveals that the purpose underlying the alteration was to bring the definition into compliance with the current medical definition. At no point in the debates did the legislature indicate that the definition was changed to classify individuals who are dependent on prescribed narcotics automatically as "drug-dependent."

Having established what the statutory definition of a "drug-dependent person" is, we now address the defendant's claim that he proved by a preponderance of the evidence that he was drug-dependent. The defendant claims that a "drug-dependent person" is synonymous with a person who is medically dependent on prescribed narcotics. We disagree.

"To obtain a conviction under § 21a-278 (b), the state must prove that the defendant possessed narcotics with the intent to sell them. [T]he absence of drug dependency is not an element of the offense. . . . Rather, [proof of drug dependency provides] an exemption from liability that must be proved by the defendant. . . . [A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense. . . .

"Whether the defendant met his burden is for the jury to determine. It is without question that the jury is the ultimate arbiter of fact and credibility. . . . As such, it may believe or disbelieve all or any portion of the testimony offered. . . . A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part of the testimony of a witness even if other parts have been found credible. . . . It is axiomatic, however, that, in rejecting such testimony, a fact finder is not free to conclude that the opposite is true." (Internal quotation marks omitted.) *State* v. *Fernandez*, 76 Conn. App. 183, 191, 818 A.2d 877, cert. denied, 264 Conn. 901, 823 A.2d 1220 (2003).

At trial, the defendant testified that he had been prescribed Percocet, which he took "[a]s prescribed, sometimes a little more, depending on the . . . extent . . . of [his] pain." The state called Helen Gori, a clinical social worker with the department of mental health and addiction services, as a rebuttal witness. Gori met with the defendant on August 28, 2000, to conduct a court-ordered substance abuse evaluation of him. Gori testified that the determination of whether an individual is drug-dependent is based on the criteria established by the mental disorders manual.[2] The criteria set forth in

[2] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders IV (4th Ed. 1994) p. 181, establishes the following criteria for substance dependence: "A maladaptive pattern of substance use, leading to clinically significant impairment or distress, as manifested by three (or more) of the following, occurring at any time in the same 12-month period:

"(1) tolerance, as defined by either of the following:

"(a) a need for markedly increased amounts of the substance to achieve intoxication or desired effect

"(b) markedly diminished effect with continued use of the same amount of the substance

"(2) withdrawal, as manifested by either of the following:

"(a) the characteristic withdrawal syndrome for the substance (refer to Criteria A and B of the criteria sets for Withdrawal from the specific substances)

"(b) the same (or a closely related) substance is taken to relieve or avoid withdrawal symptoms

the manual do not distinguish between an individual who is dependent on narcotics and one who takes a narcotic for a medical necessity. Rather, it is only a factor to be considered in making the determination of whether an individual is drug-dependent. Gori further testified that one who used narcotics prescribed by a physician generally is not considered "drug-dependent." The defendant informed Gori that he used the Percocet as prescribed by his physician, eight per day, an amount that Gori did not consider to be egregious. On the basis of her evaluation, Gori could not state that the defendant was "substance dependent in the clinical sense."

Under the factors established by the American Psychiatric Association in the mental disorders manual, an individual must exhibit three or more of the seven designated criteria to be classified as "drug-dependent." See footnote 2. From the evidence adduced at trial, the defendant failed to establish that he was dependent on drugs on August 27, 1999. There was no evidence presented at trial that the defendant needed a larger dosage of Percocet to achieve the desired result, nor was there any evidence that he was in withdrawal from Percocet. The defendant testified that he generally took the medication as prescribed, although he occasionally took more if the pain in his knees increased.

"(3) the substance is often taken in larger amounts or over a longer period than was intended

"(4) there is a persistent desire or unsuccessful efforts to cut down or control substance use

"(5) a great deal of time is spent in activities necessary to obtain the substance (e.g., visiting multiple doctors or driving long distances), use the substance (e.g., chain-smoking), or recover from its effects

"(6) important social, occupational, or recreational activities are given up or reduced because of substance use

"(7) the substance use is continued despite knowledge of having a persistent or recurrent physical or psychological problem that is likely to have been caused or exacerbated by the substance (e.g., current cocaine use despite recognition of cocaine-induced depression, or continued drinking despite recognition that an ulcer was made worse by alcohol consumption) . . . ."

There was no evidence that the defendant attempted to limit his use of Percocet or that he spent a great deal of time seeking to obtain or to use Percocet. Rather, the defendant testified that he obtained his dosage of Percocet, 240 pills per month, from a Veterans Administration hospital. There was no evidence that the defendant sought or obtained any additional pills. Finally, there was no evidence that the defendant gave up important social, occupational or recreational activities because of his use of Percocet or that the use of Percocet continued despite his having knowledge of having a persistent or recurrent physical or psychological problem that was caused by the Percocet. Accordingly, the defendant failed to establish that he met the manual's definition for drug dependency.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that it was not unreasonable for the jury to conclude that the defendant was not drug-dependent. The defendant's claim is premised on the misconception that drug dependency is synonymous with medical dependency. Mere medical dependency, by itself, does not meet the criteria established under our statutory scheme to define an individual as "drug-dependent." Gori testified that medical dependency is a factor that is to be considered in the overall determination, but that it is not dispositive. Gori further testified that typically, an individual who uses medication as prescribed is not clinically drug-dependent. The defendant also testified that he generally used the Percocet as prescribed. Additionally, the defendant's dosage was not abnormally excessive. Accordingly, crediting the testimony of Gori and referencing the criteria established under the mental disorders manual, we conclude that it was reasonable for the jury to find that the defendant did not meet his burden of proving, by a preponderance of the evidence, that he

was drug-dependent on August 27, 1999, as that term is defined in our statutes.

## II

The defendant next claims that his conviction for violating § 21a-278 (b) is invalid because the statutory definitions for drug dependence are void for vagueness. The defendant did not raise that issue before the trial court and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. . . . When any one of these conditions is not satisfied, the claim will fail." (Citations omitted; internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 10–11, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

The defendant meets the first two prongs of *Golding* because the record is adequate for our review, and a claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning. *State* v. *Rocco*, 58 Conn. App. 585, 589, 754 A.2d 196, cert. denied, 254 Conn. 931, 761 A.2d 757 (2000). The defendant, however, fails to satisfy the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists that clearly deprived him of a fair trial.

The defendant contends that the lack of a clear meaning of the phrases "drug-dependent," "drug-dependent person" and "psychoactive substance dependence on drugs" implicated his right to present an affirmative defense. *"To demonstrate that the statute is unconstitutionally vague as applied to him, the defendant must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the [victim] of arbitrary and discriminatory enforcement. . . .* As a matter of the due process of law required by our federal and state constitutions, a penal statute must be sufficiently definite to enable a person to know what conduct he . . . must avoid. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 589–90.

The defendant does not contend that he was deprived of adequate notice of what conduct § 21a-278 (b) proscribed. He also does not contend that he fell victim to arbitrary and discriminatory enforcement of the statute. Therefore, the defendant has not made a proper void for vagueness claim. Accordingly, the defendant has failed to meet the third prong of *Golding* and cannot prevail on his claim.

The judgment is affirmed.

In this opinion the other judges concurred.