STATE OF CONNECTICUT *v.* BERNARD SMALLS
(AC 23474)

Flynn, West and Dupont, Js.

Argued May 9—officially released August 5, 2003

*Louis S. Avitabile*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David J. Strollo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. This criminal case, in which the defendant, Bernard Smalls, was found guilty of murder, criminal possession of a firearm and risk of injury to a child,[1] concerns the prosecutor's rebuttal closing argument, and the court's failure to grant a motion for a judgment

[1] The defendant was found guilty by a jury of murder; General Statutes § 53a-54a (a); and risk of injury to a child; General Statutes (Rev. to 1999) § 53-21 (1). He waived his right to a jury trial on the charge of criminal possession of a firearm; General Statutes § 53a-217 (a); and was found guilty by the court. He also was found by the court to have violated General Statutes § 53-202k, which provides that a person who commits a class A, B, or C felony with a firearm shall be imprisoned for a term of five years in addition to and consecutive to any term of imprisonment imposed for the conviction of such felony. Section 53-202k is a sentence enhancement statute and, therefore, requires a jury trial. *State* v. *Velasco*, 253 Conn. 210, 226–27, 751 A.2d 800 (2000). In this case, however, the defendant waived his right to a jury trial as to § 53-202k. The defendant received a total effective sentence of fifty years incarceration.

of acquittal on the charge of risk of injury to a child[2] and the court's jury instruction on that charge. The crime of risk of injury to a child concerned the witnessing by the victim's daughter of the shooting of the victim by the defendant. We affirm the trial court's judgment of conviction.

The defendant claims that the prosecutor's remarks in rebuttal closing argument impermissibly burdened the defendant's constitutional and statutory right not to testify and impermissibly diluted the state's burden of proof. He also claims that he was entitled to a judgment of acquittal of risk of injury to a child because the evidence was insufficient to prove that he knew the child was in the area at the time of the shooting of the victim and because the court's jury instruction did not properly inform the jury of that claimed necessity. All of those claims were preserved at trial for our review.

The jury could have found reasonably that the victim, on May 15, 2000, was playing basketball with a group of children while his twelve year old daughter was playing softball on a nearby field. She saw the defendant get out of a car and begin arguing with her father about the basketball game. She ran to her father and stood there while the argument took place. The argument ended when the defendant stated that he was going to a package store to cool down and then drove away.

The defendant came back to the basketball court with a shotgun, with which he killed the victim. The victim's daughter was again playing softball on the nearby field when she noticed that the children on the basketball court were scattering. She saw the defendant get out of his car with the shotgun, and watched as he

---

[2] The risk of injury charge alleged that the defendant "did wilfully or unlawfully cause or permit a child under the age of sixteen years . . . to be placed in such a situation that her health was likely to be injured . . . ." in violation of General Statutes (Rev. to 1999) § 53-21 (1).

pulled the trigger and shot her father. She then ran toward them. After her father fell to the ground, the defendant held the gun to her father's head. She yelled, "That's my father," and the defendant then got in his car and sped away. The child and another witness identified the defendant as the shooter from an array of photographs shown to them by the police.

The police obtained a warrant for the defendant's arrest on June 21, 2000, and he gave the police a sworn, tape-recorded statement on July 5, 2000, when he turned himself in to the police. The statement was introduced into evidence by the state,[3] with two questions and answers having been redacted, at the request of the state, over the objection of the defendant.[4] The defendant's statement contained some exculpatory as well as inculpatory statements as to the murder charge. The exculpatory statements were that the defendant believed that he was acting in self-defense and that he did not want the victim to die.

The defendant did not introduce any evidence, either by way of testimony or exhibits, and did not testify at trial. In closing argument, defense counsel asked the jury to consider closely the defendant's statement. The defense counsel referred to it in connection with a right front parking light of the defendant's car, which the defendant, in his statement, said was broken by the victim when the victim threw a beer can at the car. The only other reference made in the closing argument by the defense to the defendant's statement was that the defendant had stated in it that he needed time after the warrant for his arrest to get himself together so he could turn himself in and tell his side of the story. "The statement is in evidence and you could look at it," counsel for the defendant told the jury.

---

[3] Both the defendant's counsel and the defendant, acting pro se, filed motions to suppress the statement, which were denied.

[4] The defendant does not raise any issue relating to the redaction on appeal.

## I

## PROSECUTORIAL COMMENTS

The defendant makes two claims of improper prosecutorial comments. He argues that the prosecutor should not have asked the jury to keep in mind that the person with the greatest interest in the outcome of the case was the defendant and that the jury should keep that in mind when evaluating the defendant's statement to the police.[5] The defendant argues that the admonition interfered with his constitutional right not to testify and was an improper comment on that right. The defendant also argues that he was deprived of a fair trial because the prosecutor, in closing rebuttal argument, stated that the defendant could be convicted of murder based solely on the medical examiner's report and the jury's disbelief of the defendant's statement.[6] The defendant objected to both remarks at the close of the state's rebuttal argument, but the court found them proper and refused to take any curative action. Both center around the out-of-court statement of the defendant given to the police.

The court, in its instruction, charged the jurors that they could consider the interest of the witnesses as evidenced in their sworn testimony at trial and could consider the exhibits in reaching a verdict. The court's instruction made no specific reference to the defen-

---

[5] The prosecutor stated: "You all heard what the defense is in this case. You heard the defendant's taped statement by Detective [Michael] Hunter [of the Bridgeport police department]. Keep in mind during your deliberations that the person with the greatest interest in the outcome of this case, obviously, is the defendant, and keep [that] in mind when you are evaluating his statement, given two months later to Detective Hunter."

[6] The prosecutor stated: "The state would suggest to each and every one of you, if the only evidence that you had in this case, the only evidence was that of the dead body of [the victim], but through [chief state's medical examiner Harold Wayne] Carver and [the defendant's] statement, if that was the only evidence, it would be enough to convict [the defendant] based on the statement that contradicts itself and falls in on itself."

dant's statement that he had given to the police, which was a state's exhibit. The court also charged the jurors that they could draw no adverse inference from the fact that the defendant had exercised his constitutional and statutory right not to testify.[7] The court also gave elaborate instructions on the state's burden of proving the defendant's guilt beyond a reasonable doubt.

The legal principle relevant to a claim that the prosecutor improperly commented on the defendant's decision not to testify is well settled. The question is whether the comment was intended to be or was of such character that the jury would naturally and necessarily take it to be a comment on the decision of the accused not to testify. *State* v. *Parrott*, 262 Conn. 276, 293, 811 A.2d 705 (2003). If we determine that the remark was improper, we next must decide whether it caused substantial prejudice to the defendant. See *State* v. *Yusuf*, 70 Conn. App. 594, 622, 800 A.2d 590, cert. denied, 261 Conn. 921, 806 A.2d 1064 (2002).

It is clear that once a defendant testifies during his trial, a jury is properly instructed that a prosecutor may comment on the defendant's interest in the case, which can be considered in determining the guilt or innocence of the defendant. *State* v. *Smith*, 201 Conn. 659, 665,

---

[7] General Statutes § 54-84 provides: "Testimony or silence of accused. (a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

Comment on a defendant's failure to testify is prohibited by the fifth amendment to the United States constitution, which is made applicable to the states through the fourteenth amendment. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *Malloy* v. *Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964).

519 A.2d 26 (1986). Because the court may so instruct the jury, the prosecutor has not misstated the law if he makes the same statement.

The state in this case attempts to apply the same rule that applies when a defendant has testified to the situation in which the defendant has not testified. The state argues that because the defendant was attempting to use his recorded statement to present his version of the events leading to the shooting of the victim, his credibility was put in issue, and the statement was a "substitute for his own in-court testimony." The state, therefore, urges that the reasoning of those cases in which the defendant has testified and has put his credibility in issue "applies equally in this case where the defendant chose not to testify, but relied instead on his sworn, tape-recorded statement . . . ." The defendant claims that he is entitled to a new trial because the court did not include an appropriate curative charge in its instruction, namely, a charge requiring the jury to disregard the prosecutor's remark about the defendant's interest in the case when evaluating the tape-recorded statement.

The threshold issue is whether the defendant's statement should be treated as if it were testimony given by the defendant in court for purposes of evaluating the prosecutor's comment. The issue is one of first impression in Connecticut, and the parties have cited no in-state or out-of-state case that resolves it. To resolve the matter, we look to those Connecticut cases involving General Statutes § 54-84 and cases involving the comments of a prosecutor.

It is important to recognize that the defendant did not introduce his statement into evidence. It was the state, after the defendant's motions to suppress the statement were denied, which introduced the statement as a full exhibit. Although the statement was, in part,

exculpatory,[8] the cases cited by the state as to the propriety of the prosecutor's comment are cases in which the defendant chose to testify in court and, therefore, are inapposite. The defendant chose not to testify and did not introduce the statement as his exhibit. In fact, he opposed its introduction. He did not directly put his credibility at stake by substituting his out-of-court statement for his in-court testimony, which testimony would have subjected him to cross-examination and to a determination of his credibility. We conclude that the statement was not the equivalent of in-court testimony.

The question, thus, becomes whether the prosecutor's comment was a forbidden indirect comment on the defendant's decision not to testify. The state, in its closing argument, stated that the defendant's defense consisted of a string of partial admissions with absurd explanations that did not make sense and, further, that it was the defendant who had the greatest interest in the outcome of the case, which the jury should keep in mind when evaluating his statement. We must determine whether the comment falls into the category of a comment about the discrepancy between the defendant's out-of-court statement and other evidence, as they relate to the strength of the state's case, which is allowed, or whether it falls into the category of calling the jury's attention to the fact that the defendant did not offer his own in-court explanation of the events, which is not allowed. See *State* v. *Haase*, 243 Conn. 324, 335, 702 A.2d 1187 (1997), cert. denied, 523 U.S. 1111, 118 S. Ct. 1685, 140 L. Ed. 2d 822 (1998). The test is whether the prosecutor's comment in rebuttal

---

[8] The defendant's tape-recorded statement included the following: "I didn't shoot him; the gun went off, and if you ask me, he probably did it his self because he was drunk and he ain't know what he was doing." The medical examiner testified that the victim had a blood alcohol level of 0.11, which was equal to the consumption of six or seven, twelve ounce bottles of beer in one hour. The statement also mentioned a "tussle" over the gun and the defendant's fear for his life.

argument calls on the defendant for information or for an explanation that only the defendant could be expected to supply. *State* v. *Arline*, 223 Conn. 52, 67, 612 A.2d 755 (1992). If the comment does so, it is impermissible.

An adverse comment on a defendant's silence when a defendant has not testified is forbidden because the comment weakens the defendant's privilege of silence by making the assertion of the privilege a price too expensive to pay. The jury in this case obviously was aware that the defendant did not take the witness stand. If the prosecutor's comment created a plus factor for the state in carrying its burden of proving guilt beyond a reasonable doubt because it heightened the jury's awareness of the defendant's silence, namely, his failure to answer to the state's charges, the comment is improper. That is so because the fifth and fourteenth amendments to the United States constitution and the presumption of innocence are closely aligned. *Carter* v. *Kentucky*, 450 U.S. 288, 304–305, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981). The state cannot be allowed in that way to benefit from the defendant's invocation of his constitutional privilege. See *State* v. *Lemon*, 248 Conn. 652, 662, 731 A.2d 271 (1999).

The reason for the constitutional and statutory rights given by the fifth and fourteenth amendments and § 54-84 is to reduce jury speculation as to why the defendant would remain silent. A comment that the defendant was without a reasonable explanation or had no reasonable explanation to show why he was innocent is not necessarily a comment that the jury would naturally and necessarily interpret as related to the defendant's constitutional and statutory right to decline to testify. A prosecutor also may comment on the failure of a defendant to support his factual theories. *State* v. *Washington*, 28 Conn. App. 369, 377, 610 A.2d 1332, cert. denied, 223 Conn. 926, 614 A.2d 829 (1992).

Oral statements of a defendant introduced through the testimony of witnesses can be a facet of whether the defendant's version of events is to be believed when the defendant has chosen not to testify. *State* v. *Copas*, 252 Conn. 318, 746 A.2d 761 (2000). In *Copas*, the state was allowed to comment on the believability of the defendant's claim of consensual sex, using numerous out-of-court statements that the defendant had made to the police and to psychiatrists. Id., 331. A prosecutor has the right to comment on voluntary pretrial statements if the defendant relies on those statements for a defense. See *State* v. *Haase*, supra, 243 Conn. 334.

In the present case, the court instructed the jury that it could not use the defendant's decision not to testify in any adverse way, and the defendant himself relied on his tape-recorded statement to disprove the element of intent to kill[9] and asked the jury to consider it for his side of the story.

The state called attention to the exhibit containing the defendant's statement and questioned its plausibility. The remark was more of a comment on the credibility of the state's witnesses and the believability of the defendant's statement, in light of the testimony of the state's witnesses, than it was a comment on the defendant's decision not to testify. See id., 335. We conclude that the comment did not impermissibly burden the defendant's right not to testify.

The defendant's next claim is that the state improperly remarked that its case could be proven on the basis of disbelief of the defendant's statement and the testimony of the medical examiner alone. The defendant's argument is that the prosecutor's remark about what was necessary to find the defendant guilty was

---

[9] The defendant notes in his brief that the jury might have found him guilty of a lesser included offense, which did not require an intent to kill, if the prosecutor had not made the comment.

an incorrect statement of the law because it allowed the jury to find guilt through the use of negative, nonprobative evidence, namely, a disbelief of the tape-recorded statement. The defendant's argument is that the comment allowed the jury to infer the element of intent required for a conviction of murder from disbelief of the statement instead of from evidentiary proof of his intent.

The defendant relies on the principle that when evidence is rejected or disbelieved, the opposite has not been proven to be true. See *State* v. *Stewart*, 77 Conn. App. 393, 400, 823 A.2d 392 (2003); *State* v. *Mayell*, 163 Conn. 419, 426–27, 311 A.2d 60 (1972). A jury may reject a statement of a defendant, but that rejection does not require a conclusion that the opposite of the statement is true.

The medical examiner and an expert for the state testified that the pattern of holes on the victim's body made by the entry wounds from the pellets of the defendant's twenty gauge shotgun showed that the weapon was not in contact with the skin and could not have been caused by the muzzle or the end of the gun's barrel being in contact with the victim's body. The statement of the defendant was that he believed that he was acting in self-defense and did not want the victim to die. The defendant also stated that the gun went off when "we was just tussling and then it just, I heard a big boom."

The jury either could believe that the defendant was "tussling" with the victim at close range or credit the medical examiner's testimony that the victim was not shot in close proximity to the defendant. Arguably, whether the death of the victim occurred while he and the defendant were both touching the defendant's gun relates to the defendant's intent to kill. The disbelief of the defendant's statement, however, would not prove that the opposite of it was true, although the testimony

of the medical examiner could prove the opposite, if credited. In addition to the testimony of the medical examiner, eyewitnesses to the shooting also testified that the shooting did not occur at close range.

The claim of dilution of the state's burden of proof as to the charge of murder in violation of General Statutes § 53a-54a (a) is dispelled by the court's instruction to the jury. The court accurately and exhaustively instructed the jury that the state bore the burden of proving the defendant's guilt beyond a reasonable doubt. We conclude that neither of the allegedly improper remarks by the prosecutor necessitate a new trial.

The defendant's final argument as to the state's comments in closing rebuttal argument is that the cumulative prejudicial remarks require a new trial. We do not agree that either remark was prejudicial, on the basis of our analysis of the comments and the court's instruction to the jury, and, because neither remark was prejudicial, their cumulative effect cannot be prejudicial. We conclude that a new trial is not warranted on that basis, either.

## II

## RISK OF INJURY TO A CHILD

The defendant claims that his motion for a judgment of acquittal of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1) should have been granted at the close of the state's evidence because the state did not prove that he knew of the presence of the victim's daughter at the time of the shooting. He also argues that the court's jury instructions on that charge should have stated that for the jury to find that the defendant had a mental state of reckless disregard for or deliberate indifference to the likely consequences of his act, it had to find that he knew that the child

was present when the victim was shot. The court's charge to the jury reflects the reason that the court denied the defendant's motion for a judgment of acquittal at the close of the state's evidence, and we discuss both claims together.

The state argues that neither argument of the defendant is valid because the state was not required to prove that he knew of the child's presence at the time of the shooting. Both claims rest on whether § 53-21 (1) requires the state to prove the defendant's knowledge of the presence of the child or simply to prove that the child was, in fact, present at the time the victim was shot. The testimony of the child was that she saw the defendant holding a shotgun "on her father" and saw the shooting. The defendant's position is that § 53-21 (1) is not a specific intent crime, but that the act must be wilful and directed toward the particular child to provide sufficient evidence for a conviction. The state argues to the contrary, claiming that the act of shooting the gun must be wilful, but that it need not be wilful as to the child. We agree with the state.

The statute sets forth two different types of behavior that are likely to injure a child's health. This case concerns that type of behavior that consists of a deliberate indifference to or the creation of a situation inimical to a child's physical welfare. See *State* v. *Branham*, 56 Conn. App. 395, 401, 743 A.2d 635, cert. denied, 252 Conn. 937, 747 A.2d 3 (2000). The behavior need not actually cause physical harm, but need only create a risk of harm. Id., 402. "Health" as used in the statute includes mental health. *State* v. *Payne*, 240 Conn. 766, 774, 776, 695 A.2d 525 (1997).

The state relies on *State* v. *Cutro*, 37 Conn. App. 534, 657 A.2d 239 (1995), for the proposition that the defendant did not have to know of the presence of the child at the time of the shooting to be found guilty

under the statute. In that case, the defendant had been aware of the presence of two young women prior to his act of masturbation in his car in the parking lot of a shopping mall, although he did not know at the time of the act that the young women watched him perform the act.

In this case, the defendant knew that there were many children in the area who might see him when he returned to the scene with his shotgun. He knew that one young girl listened to his original argument with the victim, although there is no indication that he knew she was the victim's daughter. The court's charge to the jury did not describe the child by name or by relationship to the victim. The jury did not need to find that the defendant knew that one of the children in the area of the shooting was the victim's daughter. In this case, as in *Cutro*, the defendant's conduct took place in public where children were likely to be present, and demonstrated a reckless disregard for its consequences and was wilful.

The court's instruction correctly advised the jury that to find the defendant guilty, it must find that the child who viewed the shooting was younger than sixteen years of age, that the defendant wilfully or unlawfully permitted the child to be placed in a situation likely to injure her mental health, that the defendant's conduct was deliberately indifferent to or created a situation inimical to the child's mental health and that he created a situation likely to injure the child's health.

We conclude that the court correctly denied the defendant's motion for a judgment of acquittal of risk of injury to a child in violation of § 53-21 (1) and correctly instructed the jury such that a new trial is not warranted on that charge.

The judgment is affirmed.

In this opinion the other judges concurred.