STATE OF CONNECTICUT *v.* MARK T. STUART
(AC 27703)

Gruendel, Beach and Hennessy, Js.

Argued September 24, 2008—officially released April 7, 2009

*Elio C. C. Morgan*, with whom was *Wayne A. Francis*, for the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Kathleen A. Dwyer*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Mark T. Stuart, appeals from the judgments of conviction, rendered after a jury trial, of twenty-eight counts arising out of his involvement in a stolen car operation.[1] Particularly, the convictions centered around his possession of three cars, a Lincoln Navigator (Navigator), a Cadillac Escalade (Escalade) and a Chevrolet Corvette (Corvette), which were stolen and had altered vehicle identification numbers (VINs). On appeal, the defendant claims that (1) the submission to the jury of certain exhibits that were not entered into evidence violated his right to an impartial jury and warranted a mistrial, (2) the conviction on more than one count of possession of a vehicle with an altered VIN with respect to a single vehicle violated his right against double jeopardy, (3) the statute prohibiting possession of a vehicle with an altered VIN, General Statutes § 14-149, is void for vagueness and (4) there was insufficient evidence to support the convictions of possession of a vehicle with an altered VIN, larceny in the first degree, conspiracy to possess a vehicle with an altered VIN and of conspiracy to commit

---

[1] Specifically, the defendant was convicted of three counts of larceny in the first degree in violation of General Statutes § 53a-122; three counts of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122; three counts of forgery in the second degree in violation of General Statutes § 53a-139; nine counts of possessing a vehicle with altered vehicle identification numbers in violation of General Statutes § 14-149; nine counts of conspiracy to possess a vehicle with altered vehicle identification numbers in violation of General Statutes §§ 53a-48 and 14-149; and one count of improper use of a motor vehicle registration in violation of General Statutes § 14-147.

larceny in the first degree. We conclude that (1) the court did not abuse its discretion in refusing to grant a mistrial because the submission to the jury of exhibits that had not been entered into evidence as full exhibits did not constitute structural error and did not violate the defendant's right to an impartial jury, (2) the conviction on multiple counts of possession of and conspiracy to possess a vehicle with an altered VIN for a single vehicle violated double jeopardy, (3) the statute prohibiting possession of a vehicle with an altered VIN is not void for vagueness, and (4) there was sufficient evidence to support the defendant's conviction of possession of stolen vehicles and possession of vehicles with altered VINs as to all three vehicles and sufficient evidence to support the defendant's conviction of conspiracy to possess stolen vehicles and conspiracy to possess vehicles with altered VINs as to the Escalade and the Navigator but not as to the Corvette. Accordingly, we affirm in part and reverse in part the judgments of the trial court.

The following facts, which the jury reasonably could have found, are relevant to our consideration of the issues raised on appeal. On December 9, 2004, an airplane patrolling for the state police picked up a LoJack signal emanating from a parking lot in Glastonbury. LoJack is a motor vehicle transmitting or homing device that can be activated to emit a unique signal if a car is stolen. It allows law enforcement personnel to locate a stolen vehicle by entering the vehicle's VIN into a tracking computer that is capable of activating and locating its unique signal. The pilot alerted Glastonbury police and directed them to the parking lot. The police found the parking lot and identified an Escalade as the vehicle that was broadcasting the signal. The police also matched the make, model, year and color of the vehicle with information provided by the LoJack system. The Escalade had a "for sale" sign in the window

with a telephone number on it. The telephone number was identified as belonging to the defendant. The license plates on the Escalade were registered to a different vehicle, a Chevrolet Lumina owned by Joanne Arena, the defendant's former wife.

When the police questioned the defendant about the Escalade, he stated that he did not know that it was stolen and that he had purchased it from Ozvaldo Seda the night before. The defendant then brought to the attention of the police a certificate of title to a Navigator, which he stated he had also purchased from Seda. The Navigator certificate was later found to be fraudulent. The Escalade certificate of title was found to contain irregularities, including nonmatching VINs, and was also shown to be counterfeit. After obtaining a search warrant, the police searched the defendant's driveway, which contained approximately six additional vehicles, including a Navigator and a Corvette. The police found irregularities on several of the Corvette's VINs and the Navigator's VINs, and it was later determined that these VINs had been altered. The Escalade was also found to have altered VINs. The Corvette, Navigator and Escalade were all seized by the police.

Inside the defendant's house, the police found a New Jersey certificate of title to the Corvette, which was later confirmed by New Jersey officials to be counterfeit. There were such a large number of other documents in the house relating to motor vehicles that an investigating officer testified at trial that it appeared as though some sort of an automobile business was being run out of the house. Among those papers was a note, written by the defendant, with the name "Ozzie," Seda's nickname, written on it. The note was dated December 3, 2004, which was approximately three days before the Escalade was stolen, and stated: "$21,500 for Escalade to Ozzie" and "$11,000 to Ozzie for Navigator."

At trial, a witness, Alfred Maldonado, testified that he had met the defendant through Seda. Seda had a car dealership and had purchased several vehicles from Maldonado. Maldonado testified that he had met with the defendant and Seda in Hartford where the defendant paid $10,000 for the Navigator and $20,000 for the Escalade. Maldonado testified that during this transaction, he indicated to the defendant that the vehicles were stolen. On December 14, 2004, Maldonado was arrested for an attempted transfer of another vehicle to Seda. He pleaded guilty to those charges and was sentenced to eighteen months incarceration. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly permitted exhibits that were not admitted into evidence to be submitted to the jury, and, as a result, the court should have declared a mistrial. He argues that this lapse constituted a structural defect and that its prejudicial effect violated his right to an impartial jury under the sixth amendment to the United States constitution.[2] In the alternative, the defendant argues that the court abused its discretion by failing to conduct an adequate hearing on the effect of the exhibits on the jurors. We disagree with both of the defendant's arguments and conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

The following additional facts are relevant to our resolution of the defendant's claims. Police officers testified before the jury that when they searched the defendant's home, they seized a number of vehicular

[2] The defendant also argues that his right to an impartial jury was violated under article first, § 8, of the state constitution. Because the defendant has not set forth a separate state constitutional analysis pursuant to *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we deem that claim abandoned and analyze the defendant's right to an impartial jury under the requirements of the United States constitution. See *State* v. *Simpson*, 286 Conn. 634, 651 n.17, 945 A.2d 449 (2008).

documents, including boxes and folders containing certificates of title, bills of sale and other documents relating to car sales. One officer testified that tables in the house were covered with hundreds of such documents. An officer further testified that the police seized approximately three dozen certificates of title from the house, some of which were in the defendant's name and some of which were not. Other items included a folder regarding an apparent business called "DiPietro Auto Sales" and a folder marked "Ford Windstar."

On the second day of jury deliberations, the court noted that exhibits marked fifty through fifty-four for identification only had been submitted to the jury as though they were full exhibits. These exhibits consisted of several of the items seized from the defendant's home, including a file folder containing numerous vehicle titles. Exhibit fifty was a folder labeled "Ford Windstar" and included a copy of a certificate of title to a Ford Windstar and handwriting on the inside regarding the delivery of a car; exhibit fifty-one comprised documents regarding DiPietro Auto Wholesalers, LLC; exhibit fifty-two consisted of a folder containing approximately forty-five vehicle titles or copies of vehicle titles and several other vehicular documents; exhibit fifty-three was a folder labeled "invoice boat" and contained several documents, several of which bore the names of the defendant and Seda, apparently pertaining to a boat; and exhibit fifty-four consisted of several other vehicular documents. These exhibits had not been marked as full exhibits but had been included in the group of exhibits submitted to the jury during its deliberation. Prior to the submission of exhibits to the jury, counsel for the defendant had stated that he had reviewed all of the exhibits before they were sent to the jury.

The defendant moved for a mistrial but also asked the court to defer its decision until after the jury rendered its decision. The state objected, but the court at

first reserved its decision on the request for a mistrial until after the verdicts. The court instructed the jury not to consider any of the information contained in exhibits fifty through fifty-four.[3] The court asked whether the jury had viewed those exhibits. The jury responded that it had, and the court reiterated its instruction to disregard the contents of those exhibits. Then, following a recess, the state renewed its request that the court rule on the mistrial prior to the verdicts. It argued that the defendant had reviewed the exhibits before they went to the jury and that he had indicated that he would not have objected to a sanitized version of the exhibits. The court agreed and denied the motion for a mistrial. It stated that the submission of the exhibits was harmless. Later that day, the jury returned its verdicts.

A

The defendant argues that the court should have declared a mistrial because the submission to the jury of exhibits marked only for identification constituted a structural defect that is not subject to harmless error analysis and violated his right to an impartial jury under the sixth amendment to the United States constitution. We disagree.

As an initial matter, we identify the appropriate standard of review of a denial of a motion for a mistrial. Although "the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon

---

[3] The court instructed the jury as follows: "I would caution you that as it relates to the file folders that the clerk held up, which represents exhibits fifty through fifty-four, those exhibits were marked for identification only, which means that those exhibits were not exhibits that you should have. And they're not exhibits that you should consider in reaching a decision. So, you will not have those exhibits back. And you're ordered not to consider those exhibits or anything you saw in those files in reaching a verdict or decision."

the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court. . . . Put another way, [o]n appeal, the defendant bears the burden of establishing that there was irreparable prejudice to the defendant's case such that it denied him a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Coltherst*, 87 Conn. App. 93, 99, 864 A.2d 869, cert. denied, 273 Conn. 919, 871 A.2d 371 (2005).

We first address the defendant's argument that the submission of the exhibits constitutes a structural defect that is not subject to harmless error analysis. "In considering the nature of a claimed constitutional violation, although typically such violations are reviewed for harmless error, there is a limited class of violations that we review for structural error. Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which

a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *State* v. *Dalton*, 100 Conn. App. 227, 230 n.3, 917 A.2d 613, cert. denied, 282 Conn. 913, 924 A.2d 139 (2007). The United States Supreme Court has recognized that structural error is distinguishable from trial error, which is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona* v. *Fulminante*, 499 U.S. 279, 307–308, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

The admission of exhibits not properly admitted into evidence is trial error, which may be subject to harmless error analysis, and is not structural error because it is not an error that fundamentally infects the entire trial process and defies analysis of its specific impact. It may be quantitatively assessed in the context of the evidence. See id.; see also *State* v. *Peeler*, 265 Conn. 460, 475–76, 828 A.2d 1216 (2003) (improper denial of defendant's constitutional right to counsel of choice during trial not subject to harmless error review because it constituted fundamental component of sixth amendment right to fair trial), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004); *State* v. *Murray*, 254 Conn. 472, 499, 757 A.2d 578 (2000) (en banc) (improper substitution of alternate juror after deliberations had commenced constituted structural error because of "[t]he inability to assess the effect of this impropriety on the defendant's trial"). In most cases involving error, constitutional or otherwise, by contrast, harmless error analysis applies. See, e.g., *State* v. *Carpenter*, 275 Conn. 785, 832–33, 882 A.2d 604 (2005) (admission of statements in violation of constitutional

right to confrontation was harmless error), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006); *State* v. *Padua*, 273 Conn. 138, 166–68, 869 A.2d 192 (2005) (en banc) (although improper jury instruction violated due process rights, error harmless); *State* v. *Montgomery*, 254 Conn. 694, 715–18, 759 A.2d 995 (2000) (admission of evidence concerning defendant's silence harmless error despite violation of due process rights). The submission of the exhibits that is at issue in the present case fits within the category of trial error and is not structural error.

The defendant also argues that the prejudicial effect of the submission of the exhibits to the jury deprived him of his right to an impartial jury under article first, § 8, of the constitution of Connecticut and the sixth amendment to the United States constitution. The defendant argues that under *State* v. *Asherman*, 193 Conn. 695, 736, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), the "[c]onsideration of extrinsic evidence is presumptively prejudicial because it implicates the defendant's constitutional right to a fair trial before an impartial jury." The paragraph in *Asherman* in which the quotation cited by the defendant appears, however, more fully discusses the appropriate considerations: "Juror misconduct which results in substantial prejudice to the defendant is not to be tolerated. But not every irregularity in a juror's conduct compels reversal. The dereliction must be such as to deprive the defendant of the continued, objective and disinterested judgment of the juror, thereby foreclosing the accused's right to a fair trial. . . . Consideration of extrinsic evidence is presumptively prejudicial because it implicates the defendant's constitutional right to a fair trial before an impartial jury. . . . A presumption of prejudice may also arise in cases involving communications between a juror and third persons. . . . But unless the nature of the misconduct on its face implicates his constitutional rights the

burden is on the appellant to show that the error of the trial court is harmful." (Citations omitted; internal quotation marks omitted.) Id.

As noted in *State* v. *Johnson*, 288 Conn. 236, 951 A.2d 1257 (2008): "As a preliminary matter, we note the settled principle that [j]ury impartiality is a core requirement of the right to trial by jury guaranteed by the constitution of Connecticut, article first, § 8, and by the sixth amendment to the United States constitution. . . . In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors. . . . The modern jury is regarded as an institution in our justice system that determines the case solely on the basis of the evidence and arguments given [it] in the adversary arena after proper instructions on the law by the court. . . . The United States Supreme Court has noted, however, that the [c]onstitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. . . . Were that the rule, few trials would be constitutionally acceptable. . . . We have recognized, moreover, that [t]he trial court, which has a first-hand impression of [the] jury, is generally in the best position to evaluate the critical question of whether the juror's or jurors' exposure to improper matter has prejudiced a defendant." (Citations omitted; internal quotation marks omitted.) Id., 248–49.

For the purpose of analysis, we assume that the jury's viewing of the exhibits in question may be deemed an improper viewing of extrinsic evidence. The ultimate issue is whether the defendant's right to a fair trial was compromised and the defendant thereby prejudiced. See id.; *State* v. *Newsome*, 238 Conn. 588, 628, 682 A.2d 972 (1996). Case law recognizes that the trial judge is

in the superior position to gauge the extent and effect of any improper viewing. *State* v. *Brown*, 235 Conn. 502, 527–28, 668 A.2d 1288 (1995); see also *State* v. *Johnson*, supra, 288 Conn. 249. In the case at hand, the court denied the motion for a mistrial when the court was fully aware of the circumstances. The court knew that the contents of the exhibits at issue were referenced and described at length in testimony by the police officers who had searched the defendant's house. One officer testified that there were hundreds of documents in the defendant's house, a fraction of which would have been represented by the exhibits at issue. The purpose of the testimony was not to show that other vehicles had been stolen but, rather, to show that the defendant knew the car business. The court carefully instructed the jury to disregard the exhibits. Therefore, the inadvertent submission of exhibits fifty through fifty-four did not compel a mistrial, and the court did not abuse its discretion.

B

The defendant next claims that even if the jury's view of the exhibits was not within the structural defect exception to harmless error analysis and did not violate his right to an impartial jury, the court improperly failed to conduct a hearing on the impact of the exhibits on the jurors. We disagree.

The defendant relies on *State* v. *Brown*, supra, 235 Conn. 502, to support his argument that the court improperly failed to conduct a hearing on the effect of the exhibits on the individual jurors. In *Brown*, our Supreme Court held that a trial court must *sua sponte* conduct a preliminary inquiry, on the record, whenever it is presented with any allegations of jury misconduct in a criminal case. Id., 526. The defendant is correct in his assertion that once a court discovers that a jury has seen extrinsic evidence, some level of inquiry is

mandated. Id., 526–32. The appropriate response is of necessity discretionary; "the form and scope of such an inquiry [is] within [the court's] discretion." Id., 529. "In the proper circumstances, the trial court may discharge its obligation simply by notifying the defendant and the state of the allegations, providing them with an adequate opportunity to respond and stating on the record its reasons for the limited form and scope of the proceedings held." Id. In other circumstances, more extensive evidentiary hearings may be required. The *Brown* court went on to suggest the consideration of three factors: the private interest involved, the risk of a deprivation of a fair trial before an impartial jury and the state's interest. Id., 529–32.

Here, on the record, the court immediately informed counsel of the submission to the jury of the exhibits at issue and extended the opportunity to comment. A limited inquiry was made to the jury and a curative instruction was given. Though the court did not explicitly or formally discuss the *Brown* factors, it did exercise its discretion in a manner consistent with the *Brown* mandate. The circumstances did not suggest egregious misconduct, and the court and the parties were well aware of the nature of the materials submitted. Though "extrinsic" in the sense that the jury should not have viewed exhibits that were not admitted as full exhibits, the exhibits were not in this case as inherently prejudicial to the fairness of the trial as out-of-court comments made to jurors or jurors' consideration of materials or information unknown to the court may be in other situations. Here, the court did not abuse its discretion in deciding that no further inquiry was necessary.

## II

The defendant next claims that his convictions on multiple counts of possession of and conspiracy to possess a vehicle with altered VINs, where separate counts

were based on each altered VIN on each vehicle, violated his right against double jeopardy.[4] We agree.

Before we address the defendant's double jeopardy claims, however, we must first address the state's claim that the mittimus and judgment files incorrectly list concurrent terms of one year on each count of possession of a vehicle with altered VINs when the court actually imposed sentences of unconditional discharge on all such counts. The state refers to the sentencing transcript, which states in pertinent part as follows: "On the forgery second counts, five years concurrent. On the VIN number counts, one each. Possession of a motor vehicle with the changed VIN number, unconditional discharge. Conspiracy to possess a motor vehicle with a changed VIN number, an unconditional discharge." We agree with the state that there seems to be a discrepancy between the court's statement of "one each" for the "VIN number counts" and the following statement of unconditional discharge. In context, it is clear that the court's intended sentence for the counts of possession of a vehicle with an altered VIN was unconditional discharge. Accordingly, we remand the case with direction to the court to correct the mittimus and judgment files to reflect the court's intended sentence of unconditional discharge.

This direction, however, does not conclude our examination of the defendant's convictions of possession of a vehicle with an altered VIN. The defendant was convicted of nine counts of possessing a vehicle with altered vehicle identification numbers in violation of § 14-149 (a) and nine counts of conspiracy to possess a vehicle with altered vehicle identification numbers in violation of General Statutes §§ 53a-48 and 14-149. Four of the counts of possession of a vehicle with altered

---

[4] The state concedes this point and agrees that General Statutes § 14-149 (a) does not warrant multiple convictions with respect to a single vehicle.

VINs and conspiracy to commit the crime related to the Escalade, three of each related to the Corvette and two of each related to the Navigator.

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. . . . We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." (Internal quotation marks omitted.) *State* v. *Coltherst*, supra, 87 Conn. App. 112. Here, the defendant's claim implicates the protection against multiple punishments for the same offense.

The defendant was convicted of a total of nine counts of violating § 14-149 (a). That section provides in relevant part: "No person shall purchase, sell or have in such person's possession any motor vehicle . . . with a mutilated, altered or removed vehicle identification, factory or engine number or a number which shows evidence of having been tampered with . . . ." General Statutes § 14-149 (a). The text of the statute makes clear that it is illegal to possess a vehicle with an altered VIN. It punishes the possession of the vehicle with an altered VIN or VINs, not the alteration of individual VINs themselves. That is, the operational language of

the statute addresses motor vehicles, not VINs. Therefore, the defendant could have been convicted of no more than three counts of violation of § 14-149 (a): one each for the Escalade, Corvette and Navigator. The defendant's convictions on multiple counts of violations of § 14-149 (a) arising out of a single vehicle violate the defendant's right against multiple punishments for the same offense.

Having reached the conclusion that the defendant's right against double jeopardy was violated, we must next determine the proper remedy and course of action for the trial court on remand. When a defendant has received multiple punishments for the same offense, frequently lesser offenses are merged into the greater offenses and the sentences for lesser offense are vacated. See, e.g., *State* v. *Padua*, supra, 273 Conn. 172; *State* v. *Jeffreys*, 78 Conn. App. 659, 683, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). The justification for this remedy is that "if the remaining . . . conviction were later invalidated upon collateral attack for a reason not affecting the merged . . . conviction, that unaffected conviction would be resuscitated and the defendant punished for it." *State* v. *Howard*, 221 Conn. 447, 463, 604 A.2d 1294 (1992). Otherwise, "[i]f . . . the remaining . . . conviction were somehow invalidated, no other conviction would remain to be resuscitated, and, therefore, the defendant could not be punished for the conviction previously vacated." Id. In the present case, there is no lesser conviction that can be merged into a greater conviction; all of the offenses are identical. The defendant simply was charged too many times for a single offense. Accordingly, we remand the case to the trial court with direction to vacate the judgments of conviction of three of the four counts of possession of a vehicle with altered VINs relating to the Escalade, two of the three counts of possession of a vehicle with altered VINs relating to

the Corvette and of one of the two counts of possession of a vehicle with altered VINs relating to the Navigator, leaving intact one count for each car. The jury clearly found the defendant guilty of those offenses.

The defendant also was convicted on twelve counts of conspiracy relating to the three cars. Regarding the Escalade, the defendant was convicted of one count of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122, and four counts of conspiracy to possess a vehicle with altered VINs in violation of §§ 53a-48 and 14-149 (a). Regarding the Corvette, the defendant was convicted of one count of conspiracy to commit larceny in the first degree and three counts of conspiracy to possess a vehicle with altered VINs. Regarding the Navigator, the defendant was convicted of one count of conspiracy to commit larceny in the first degree and two counts of conspiracy to possess a vehicle with altered VINs. The state concedes that these multiple convictions per vehicle violate double jeopardy and states that "the twelve conspiracy convictions—i.e., the nine charges for conspiracy to possess vehicles with altered VINs, and the three charges for conspiracy to possess stolen vehicles, should have merged into one conspiracy per transaction or vehicle, for a total of three conspiracies." In light of the state's position, we think it appropriate to remand the case and order all of the counts of conspiracy to possess a vehicle with an altered VIN vacated with respect to the Escalade and the Navigator, leaving intact one count of conspiracy to commit larceny in the first degree for each of those vehicles. Because we reverse in part IV, on other grounds, the defendant's conviction of conspiracy to commit larceny in the first degree and conspiracy to possess a vehicle with an altered VIN with respect to the Corvette, we need not address those counts regarding the Corvette as they relate to double jeopardy. We do not find it necessary

to express an opinion as to whether conviction of conspiracy to possess a vehicle with an altered VIN and conspiracy to commit larceny in the first degree, with respect to the same stolen vehicle, violates double jeopardy.[5]

### III

The defendant next claims that § 14-149 (a) is unconstitutionally vague. The defendant failed to raise this claim at trial and seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We will review his claim under *Golding* because the record is adequate and because a claim that a statute is unconstitutionally vague implicates a defendant's fundamental due process right to fair warning. *State* v. *Coleman*, 83 Conn. App. 672, 676–77, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005). We conclude, however, that a constitutional violation does not clearly exist and that the defendant was not deprived of a fair trial.

We begin by setting forth the relevant legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. The Connecticut constitution also requires that statutes with penal consequences provide sufficient

---

[5] Whether such a violation exists may depend on the facts of the case.

[6] Under *Golding*, "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vasquez*, 66 Conn. App. 118, 123, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001).

notice to citizens to apprise them of what conduct is prohibited. . . . The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Citations omitted; internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 158–59, 778 A.2d 955 (2001). "For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Internal quotation marks omitted.) *State* v. *Ortiz*, 83 Conn. App. 142, 158, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004).

The defendant claims that because of unconstitutionally vague language in § 14-149 (a), he was a victim of arbitrary and discriminatory enforcement and was denied his due process rights under the fifth and fourteenth amendments to the United States constitution. The defendant seems to base his argument on the claim that, at trial, "the parties, the judge and the jury could not agree on a common interpretation of the statute without argument." Specifically, the defendant refers to the fact that the jury asked the court whether the statute requires knowledge. After argument by the parties, the court clarified its instructions by stating that there was an implied knowledge requirement. The defendant also claims that the fact that the state charged the defendant with multiple counts for a single violation of the statute, as described in part II, lends credence to his claim of vagueness. The state asserts that the

statute is not unconstitutionally vague and that the parties essentially agree on all of the alleged ambiguities.[7] We agree with the state.

In challenging the constitutionality of a statute, the defendant bears a heavy burden. To prevail on his vagueness claim, "[t]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement." (Internal quotation marks omitted.) *State* v. *Springmann*, 69 Conn. App. 400, 407, 794 A.2d 1071, cert. denied, 260 Conn. 934, 802 A.2d 89 (2002). "The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Bloom*, 86 Conn. App. 463, 469, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005).

With these principles in mind, we turn to the particular facts of this case. The defendant inflates the level of disagreement between the parties as to the meaning of § 14-149 (a). As stated in part II, both the state and the defendant agree that § 14-149 (a) does not warrant multiple punishments when several VINs on a single vehicle have been altered. Also, at trial, the state never disagreed with the court's interpretation of the statute, which included an implied knowledge requirement. The

---

[7] The language of the statute, of course, is not unconstitutionally vague merely because parties contend that is has different meanings. See *State* v. *Mattioli*, 210 Conn. 573, 579, 556 A.2d 584 (1989).

record does not provide any indication that the parties argued over this matter, as the defendant asserts. Even if the parties did differ in their interpretation of the statute, "[h]onest disagreement about the interpretation of a statutory provision does not . . . make the statute ambiguous or vague." *State* v. *Mattioli*, 210 Conn. 573, 579, 556 A.2d 584 (1989). We find that the statute, as applied and narrowed by the court in this case, has a clear meaning that is readily understandable: it is unlawful knowingly to possess a vehicle with one or more altered VINs. Accordingly, the defendant has failed to meet the third prong of *Golding* and cannot prevail on his claim.

## IV

The defendant's final claim is that there was insufficient evidence to convict him of all counts of larceny in the first degree, conspiracy to commit larceny in the first degree, possession of a vehicle with an altered VIN and conspiracy to commit possession of a vehicle with an altered VIN. We agree with the defendant's claim only as it relates to his conviction of conspiracy to commit larceny in the first degree and conspiracy to possess a vehicle with an altered VIN relating to the Corvette. Accordingly, we reverse in part and affirm in part the judgments of the trial court.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667, 804 A.2d 810 (2002).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 238–39, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Davis*, 68 Conn. App. 794, 798, 793 A.2d 1151, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). Furthermore, "[i]n our review of the evidence to determine its sufficiency, we do not look at the evidence to see whether it supports the defendant's innocence. . . . Instead, our focus is whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Farnum*, 275 Conn.

26, 36, 878 A.2d 1095 (2005). Guided by these principles, we now turn to the defendant's specific claims.

A

The defendant claims that the state presented insufficient evidence to prove beyond a reasonable doubt that he committed larceny in the first degree in violation of § 53a-122 and that he possessed vehicles with an altered VIN in violation of § 14-149 (a). We disagree and analyze the defendant's claim as it applies to each vehicle.

The defendant was convicted of larceny in the first degree for receiving each of the three stolen vehicles. "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119. One receives stolen property when "he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ." General Statutes § 53a-119 (8). A person is guilty of larceny in the first degree when he receives a stolen motor vehicle, "the value of which exceeds ten thousand dollars . . . ." General Statutes § 53a-122 (a) (3).[8] The VIN statute, General Statutes § 14-149 (a), provides in relevant part: "No person shall purchase, sell or have in such person's possession any motor vehicle . . . with a mutilated, altered or removed vehicle identification, factory or engine number or a number which shows evidence of having been tampered with . . . ."

We turn first to the conviction relating to the Corvette. The jury logically and reasonably could have concluded that the defendant received the vehicle knowing

---

[8] At trial, it was established that the value of each vehicle, the Escalade, Navigator and Corvette, exceeded $10,000. The defendant does not challenge value.

that it was stolen and that its VINs had been altered or tampered with. Witnesses testified that the defendant was heavily involved in buying and selling automobiles. Police officers testified that they found hundreds of vehicular documents in the defendant's home. The dashboard VIN on the Corvette noticeably was altered in that it appeared to be in two separate pieces as though there were a plate over it. Also, it was cut at an angle and the rivets were damaged with scratches or marks. It seemed to have been replaced. The police found a certificate of title and temporary registration papers for the Corvette inside the defendant's house. A police officer testified that upon initial review of the title, it was apparent that the VIN on the title was at an angle and appeared to have erasures on it. An officer also testified that the document did not appear to be official. In a statement made to the police after his arrest, the defendant stated that he usually inspects VINs on the vehicles he purchases to check vehicle history reports. The defendant's former wife testified that the defendant had been purchasing and selling vehicles for several years. Therefore, on the basis of the defendant's extensive experience in dealing with automobiles and VINs, the jury could have reasonably inferred that he knew that the Corvette was stolen and that its VINs had been altered.

Turning next to the Escalade and the Navigator, there was sufficient evidence from which the jury could have concluded that the defendant possessed the vehicles knowing that they were stolen and that their VINs were altered. Maldonado testified that the defendant met with Maldonado and Seda in Hartford and paid Maldonado $20,000 for the Escalade and $10,000 for the Navigator. Maldonado also testified that at this meeting, he indicated to the defendant that both vehicles were stolen. Shortly after the defendant purchased the Escalade for $20,000, he offered it for sale for $35,000 and

advertised it as a 2004 model even though it was really a 2003 model. When the police questioned the defendant about the Navigator, he gave inconsistent answers and stated that he did not know where it was. After the Navigator was seen at his house by the police, the defendant admitted that it was in his driveway and stated that he did not know why he had lied about its location. Regarding the Navigator's VINs, investigating officers testified as to the following facts: the dashboard VIN was not factory issued, it was crooked, it appeared to be curled and buckled, and it did not lie flat; the VIN on the doorjamb was not authentic because it did not self-destruct when it was peeled back; and the VINs on the dashboard and doorjamb did not match other authentic VINs on the vehicle. Regarding the Escalade's VINs, investigating officers testified as to the following facts: the VIN on the doorjamb was wrinkled and there was a bubble on the seam where it was applied to the metal of the door, the dashboard VIN had an extra space on the left rivet, and it was apparent that it was not authentic just by looking at it. On this information, and in consideration of the defendant's extensive experience in dealing with automobiles and VINs, the jury could have reasonably concluded that the defendant knew that the Escalade and Navigator were stolen and that their VINs had been altered.

B

The defendant also claims that the state presented insufficient evidence to prove beyond a reasonable doubt that he committed conspiracy to commit larceny in the first degree in violation of §§ 53a-48 and 53a-122, and conspiracy to possess a vehicle with an altered VIN in violation of §§ 53a-48 and 14-149 (a). We agree that there was insufficient evidence to convict the defendant of conspiracy to commit larceny in the first degree and conspiracy to possess a vehicle with an altered VIN as to the Corvette only and affirm the judgments of

conviction with respect to one count of conspiracy to commit larceny in the first degree for each of the other two vehicles. See part II of this opinion.

"A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." General Statutes § 53a-48 (a). As to the Navigator and Escalade, there was sufficient evidence from which the jury could have concluded that the defendant entered into agreements to purchase and that he purchased the vehicles knowing that they were stolen and had altered VINs. Police found a note, written by the defendant and dated several days before he had purchased the vehicles, about paying Seda $21,500 for an Escalade and $11,000 for a Navigator. The defendant was present at the transaction in Hartford when Maldonado indicated to the defendant and Seda that the vehicles were stolen. On this evidence, the jury reasonably could have concluded that the defendant knew the vehicles were stolen when he entered into the agreement to purchase them. It was also reasonable for the jury to conclude that the defendant knew that the vehicles had altered VINs when he agreed to purchase them because of his dealings with Maldonado and Seda and the fact that he knew the vehicles to be stolen.

There was, however, insufficient evidence to support the defendant's conviction of conspiracy to commit larceny in the first degree and conspiracy to possess a vehicle with an altered VIN relating to the Corvette. There was no evidence presented at trial that the defendant conspired with anyone to purchase or to possess the vehicle. Therefore, we reverse the defendant's conviction on conspiracy charges related to the Corvette.

The judgment is reversed as to the conviction of one count of conspiracy to commit larceny in the first

degree and three counts of conspiracy to possess a motor vehicle with an altered vehicle identification number with respect to the Corvette and the case is remanded with direction to render judgment of not guilty of those crimes. The judgment of conviction on three counts of possession of a motor vehicle with an altered vehicle identification number and four counts of conspiracy to commit that crime with respect to the Escalade is vacated, the judgment of conviction on two counts of possession of a motor vehicle with an altered vehicle identification number with respect to the Corvette is vacated and the judgment of conviction on one count of possession of a motor vehicle with an altered vehicle identification number and two counts of conspiracy to commit that crime with respect to the Navigator is vacated. On remand, the court is further directed to correct the judgment files to reflect sentences of unconditional discharge for the crimes of possession of a motor vehicle with an altered vehicle identification number. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.