STATE OF CONNECTICUT *v.* RAMON S. BARKSDALE
(AC 22056)

Pellegrino, Bishop and West, Js.

---

Argued April 29—officially released September 2, 2003

*Sean K. Crowshaw*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Ramon S. Barksdale, appeals from the judgment of conviction, rendered after a trial to the jury, of three counts of sexual assault in

the second degree in violation of General Statutes § 53a-71 (a) (1), three counts of risk of injury to a child by committing an act that was likely to impair the health and morals of a child in violation of General Statutes (Rev. to 1997) § 53-21 (1), and three counts of risk of injury to a child by having contact with the intimate parts of a child younger than sixteen years of age in violation of General Statutes (Rev. to 1997) § 53-21 (2). The defendant received a total effective sentence of twenty years in prison. On appeal, the defendant claims that (1) he was denied the right to a fair trial because the court failed to instruct the jury on every element of the crime of risk of injury to a child pursuant to § 53-21 (2) and (2) twenty years incarceration for the commission of a class C felony is an illegal sentence. We conclude that the court's jury instruction did not deprive the defendant of a fair trial, but that he was illegally sentenced.

The jury reasonably could have found the following facts. In January, 1998, the victim[1] was thirteen years old and an eighth grade student. At that time, the victim began to attend a therapeutic program at a hosptial during the afternoons. The defendant was the operator of a large van that enabled the victim and others to travel to the hosptial. He called for the victim at her school at noon. He also conveyed the victim from the hospital to her home after 5 p.m. The defendant, who was twenty-eight years old, and the victim got to know one another. He told her about his family, showed her his tattoos, and played basketball with her and the other students.

The defendant did not always take the victim directly to the hospital from school. On the first occasion, the

---

[1] In accordance with our policy of protecting the privacy interest of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

defendant deviated from the established route by purchasing cigarettes, driving to a beach and inquiring of the victim whether she smoked marijuana. After the two of them smoked marijuana, they called for the other students. The defendant provided the victim with marijuana on at least two more occasions.

At some time during January, 1998, the victim asked the defendant whether he would have sexual relations with her. After hesitating initially, the defendant agreed. That evening after taking the other students home, the defendant took the victim to the parking lot of a hotel and had vaginal intercourse with her. Twice more, after first taking the other students home, the defendant took the victim to a secluded location and engaged in vaginal intercourse with her.

After receiving telephone calls from the parents of two of the victim's friends, the victim's mother withdrew the victim from the program at the hospital. The victim had confided her relationship with the defendant to two of her friends, but at first denied the relationship to her parents, to officials at the hospital and to the police. Approximately one year later, the victim admitted that the defendant had given her marijuana and had had sexual intercourse with her on three occasions. The defendant denied having had sexual relations with the victim and having given her marijuana. Thus, the question for the jury to decide was one of credibility. Other facts will be discussed as necessary.

I

The defendant's first claim is that the court, *McKeever, J.*,[2] deprived him of the right to a fair trial by failing to instruct the jury on all of the elements of § 53-21 (2). Specifically, he claims that the court failed

---

[2] Judge McKeever, now deceased, became ill during jury deliberations and was unable to continue. Judge Ford accepted the jury's verdict.

to instruct the jury that to find the defendant guilty of risk of injury to a child under subdivision (2) of the statute, it had to find that he had had contact with the intimate parts of the victim in a sexual and indecent manner. He also claims that the court instructed the jury with respect to § 53-21 (1) rather than to § 53-21 (2).[3] Because the defendant failed to preserve his claim at trial, he has asked us to review his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[4] or the plain error doctrine set forth in Practice Book § 60-5.[5] We conclude that although the court failed to instruct the jury on one of the elements of the statute, which is a clear constitutional violation; *State* v. *Austin*,

[3] General Statutes (Rev. to 1997) § 53-21 provides: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239-40.

[5] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

244 Conn. 226, 235, 710 A.2d 732 (1998); the error was harmless beyond a reasonable doubt and did not constitute plain error.

"Our Supreme Court's standard of review regarding claims of improper jury instruction is well established. [A] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 677, 820 A.2d 1122 (2003).

"[A]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . [T]he failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995).

"An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reason-

ably possible that, considering the charge as a whole, the jury was misled." (Internal quotation marks omitted.) *State* v. *Gallichio*, 71 Conn. App. 179, 184, 800 A.2d 1261 (2002). "[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if 'a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by the overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . .' " (Emphasis in original.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

The following additional facts are relevant to our review of the defendant's claim. In its amended information, the state charged the defendant in counts one, four and seven with sexual assault in the second degree, alleging in relevant part that he had engaged in sexual intercourse with the victim, who was a person thirteen years of age, but younger than sixteen years of age, and that he was more than two years older than she was, in violation of § 53a-71 (a) (1). In parallel counts three, six and nine, the defendant was charged with risk of injury to a child by *having contact with the intimate parts of the victim*, a child younger than sixteen years of age, in violation of § 53-21 (2). The jury had the amended information while it was deliberating.

The court instructed the jury as to the charges of sexual assault in the second degree, stating that § 53a-71a (1), "as it is pertinent to this case, provides that a person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is thirteen years of age or older, but under sixteen years of age, and the actor is more than two years older than such person.

"For you to find the defendant guilty of this charge, the state must first prove beyond a reasonable doubt

that sexual intercourse has taken place. Sexual intercourse in this case means vaginal intercourse. Its meaning is limited to persons not married to each other, and penetration, however slight, is sufficient to complete vaginal intercourse and does not require the emission of semen."[6]

After the court instructed the jury on sexual assault in the second degree, it instructed the jury on the charges of risk of injury to a child in violation of § 53-21 (1), which pertained to the defendant's having given the victim marijuana. Immediately thereafter, the court instructed the jury as follows relevant to the charges under § 53-21 (2): "This statute here, in pertinent part, reads, any person who does any act likely to impair the morals of a child under the age of sixteen years shall be punished. To find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: That at the time of the incident, the alleged victim was under the age of sixteen years, that the defendant did an act that was likely to impair the health or morals of the child and that the defendant had the general intent to perform such act.

"The conduct to be punished must involve a child under the age of sixteen. The statute also requires that the defendant did any act likely to impair the morals of the child. To establish that the defendant committed an act likely to impair the morals of a child, the state must prove beyond a reasonable doubt that the defen-

---

[6] The remainder of the court's instruction on sexual assault in the second degree was as follows: "If you find the required sexual intercourse has been proven beyond a reasonable doubt, you must next determine whether the following additional element exists beyond a reasonable doubt, that the victim was thirteen years of age or older, but under sixteen years of age, and the actor, meaning the defendant, was more than two years older than such person at the time this offense was committed. If you find that the state has proven the elements of this crime beyond a reasonable doubt, you will find him guilty of this count. If you do not so find, you will find him not guilty."

dant acted in a sexual and indecent manner. The act itself must be done in a sexual and indecent manner. *Innocent touching is not violative of the statute.* It is not the act itself that is likely to impair the morals of the child, but the manner in which it is done. Therefore, the inquiry under this second provision is whether the defendant did any act in a sexual and indecent manner that was likely to impair the morals of the child. Again, however, the defendant need not have had the specific intent to impair the morals of the child, only the general intent to perform the sexual and indecent act.

"As used here, morals means good morals, living, acting and thinking in accordance with those principles and precepts which are commonly accepted among us as right and decent. The state must also prove beyond a reasonable doubt that the defendant had the general intent to perform such act. General intent is the intent to do that which the law prohibits. It is not necessary for the state to prove that the defendant intended the precise harm or the precise result which eventuated. In other words, general intent is at least an intention to make the bodily movement which constitutes the act which the crime requires. Therefore, where the definition of a crime requires some forbidden act by the defendant, in this case, an act likely to impair the morals of the child, the defendant's bodily movement, to qualify the act, must be voluntary." (Emphasis added.)

The charge failed to inform the jury that the state was required to prove that the defendant had contact with the intimate parts of the victim and failed to define intimate parts. General Statutes § 53a-65 (8) defines the term intimate parts as "the genital area, groin, anus, inner thighs, buttocks or breasts."

For resolution of the defendant's claim, we do not ignore the fact that the jury convicted the defendant of three counts of sexual assault in the second degree as

a result of his having engaged in sexual intercourse with the thirteen year old victim. The jury, having found that the defendant had sexual intercourse with the victim, necessarily had to find, by exercise of its common sense, that he had had contact with her genital area. See *State* v. *Davis*, 255 Conn. 782, 795, 772 A.2d 559 (2001) (by virtue of finding defendant guilty of robbery in first degree and burglary in first degree, jury necessarily found defendant had committed class B felonies).

On appeal, the defendant does not contest the jury's verdict on the primary issue in the case, which was whether he had engaged in sexual intercourse with the victim. In fact, in his brief, the defendant concedes that the jury found that he had contact with the victim's intimate parts when it convicted him of sexual assault in the second degree. In making that concession, the defendant acknowledged that the issue of whether he had had contact with the intimate parts of the victim pursuant to the counts of the information alleging that he had violated § 53-21 (2) was uncontested and supported by the overwhelming evidence. The issue in the sexual assault count was whether the defendant had engaged in sexual intercourse with the victim, not the definition of intimate parts. See *State* v. *Montgomery*, supra, 254 Conn. 737–38.[7]

---

[7] In *Montgomery*, the jury convicted the defendant of murder and felony murder. *State* v. *Montgomery*, supra, 254 Conn. 697. The state also had charged the defendant under General Statutes § 53-202k with using a firearm during the commission of a class A, B, or C felony. *State* v. *Montgomery*, supra, 697. The trial court determined that the defendant had violated § 53-202k by using a firearm during the commission of a murder. Id. On appeal, the defendant claimed that it was improper for the court to have failed to instruct the jury on the elements of § 53-202k. Id., 698. Although our Supreme Court agreed that the jury should have been instructed on the elements of § 53-202k in accord with *State* v. *Velasco*, 253 Conn. 210, 751 A.2d 800 (2000), which was decided while the appeal in *Montgomery* was pending, the court concluded that the trial court's failure to instruct was harmless beyond a reasonable doubt. *State* v. *Montgomery*, supra, 738. The information alleged that the defendant had caused the death of the victim by use of a firearm; id., 737; and the defendant did not contest that the victim had been shot in the head, only that the defendant was not the shooter. Id., 738. Our Supreme

In addition, the defendant has argued that because the court's instruction that to find him guilty, the jury had to find that he had done an act that impaired the health or morals of the victim, it was not possible to know which act the jury found to be in violation of § 53-21 (2). The defendant notes that the state presented evidence that he had done a number of things of a sexual nature that did not involve contact with the victim's intimate parts[8] and that the jury could have found him guilty on the basis of those acts rather than on the basis of having had contact with the intimate parts of the victim. That argument is unavailing for two reasons. First, the court made reference to a touching in distinguishing an innocent touching from a touching that is sexual and indecent. The jury also had the amended information with it during deliberations. The relevant counts allege that the defendant had contact with the intimate parts of a child younger than sixteen years of age. The jury, therefore, was not possibly misled as to the sexual act to which the court was referring.

Within his claim of instructional error, the defendant also argues that even if he had had contact with the victim's private parts, the state produced no evidence that the victim's health or morals were impaired.[9] The short answer to that argument is that the state did not have to prove that the victim's health or morals were impaired. Section 53-21 provides in relevant part that

Court concluded that the jury, in convicting the defendant of murder, a class A felony, necessarily found that he had violated § 53-202k. Id., 737.

[8] For example, the defendant refers to evidence that he threw a used condom out the window of the van.

[9] At trial and on appeal, the defendant has not claimed that the evidence was insufficient to convict him other than to make the bald assertion that the state produced no evidence that the victim's health or morals were impaired. In making his claim in this court, the defendant has provided no law or legal analysis to support his claim. We are not required to review claims that are inadequately briefed. See *Middletown Commercial Associates Ltd. Partnership* v. *Middletown* 42 Conn. App. 426, 439 n.12, 680 A.2d 1350, cert. denied, 239 Conn. 939, 684 A.2d 711 (1996).

"[a]ny person who . . . (2) has contact with the intimate parts . . . of a child . . . in a sexual and indecent manner *likely* to impair the health or morals of such child, shall be guilty of a class C felony." (Emphasis added.)

The defendant has not challenged the court's thorough instruction on the "*likely* to impair the health or morals" element of the statute, only the evidence to support the charge. When charging the jury on that portion of the statute, the court stated in relevant part: "To establish that the defendant committed an act likely to impair the morals of a child, the state must prove beyond a reasonable doubt that the defendant acted in a sexual and indecent manner. The act itself must be done in a sexual and indecent manner. *Innocent touching* is not violative of the statute. It is not the act itself that is likely to impair the morals of the child, but the manner in which it is done. Therefore, the inquiry under this second provision is whether the defendant did any act in a sexual and indecent manner that as likely to impair the morals of the child." (Emphasis added.) The court then defined morals for the jury. It was for the jury to determine whether the defendant's touching of the intimate parts of the victim was in accordance with the principles and precepts that are commonly accepted among us as right and decent.

We therefore conclude that the court's improper jury instruction was harmless beyond a reasonable doubt, as the verdict was supported by overwhelming evidence. See *State* v. *Montgomery*, supra, 254 Conn. 738. It was not reasonably possible that the jury was misled by the court's instruction on the charges alleged pursuant to § 53-21 (2). Furthermore, the improper instruction was not plain error. The instruction did not affect the fairness and integrity of or threaten to undermine the public's confidence in our judicial system. Cf. *State*

v. *Hair*, 68 Conn. App. 695, 705, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002).[10]

## II

The defendant's second claim is that he was sentenced illegally under § 53a-71 (a) (1). The state concedes that the sentence was illegal. We agree.

The defendant's claim is one of law, and our review is therefore plenary. See *State* v. *Wall*, 40 Conn. App. 643, 654, 673 A.2d 530, cert. denied, 237 Conn. 924, 677 A.2d 950 (1996). Subsequent to the verdict, the court, *Rodriguez, J.*,[11] sentenced the defendant. As to the defendant's conviction of three counts of having violated § 53a-71 (a) (1), the court sentenced him to twenty years in the custody of the commissioner of correction, execution suspended after four years, with twenty years of probation on each of the three counts of sexual assault in the second degree. The sentences were to be served concurrently. On appeal, the defendant claims that he was sentenced illegally under § 53a-71 (a) (1) because at the time he committed the assault, the violation of § 53a-71 (a) (1) was a class C felony for which the maximum period of incarceration was ten years.[12]

---

[10] In making his plain error argument, the defendant relied in large measure on *Hair*, the facts of which are distinguishable from those involved in the claim of an improper jury charge in this case. In *Hair*, the defendant was charged with violation of General Statutes § 53a-217c, but the court instructed the jury on General Statutes § 53a-217. *State* v. *Hair*, supra, 68 Conn. App. 703. Here, the jury necessarily found that the defendant had touched the intimate parts of the victim when it convicted him of sexual assault in the second degree. In *Hair*, the jury did not make an implicit finding of fact on an element of the crime with which the defendant was charged. Id., 704. Consequently, *Hair* does not apply to facts here.

[11] Judge Rodriguez was substituted as the trial court for postverdict proceedings.

[12] For informational purposes only, we note that in 2002, the legislature amended subsection (b) of General Statutes § 53a-71 to change the classification of a violation of § 53a-71 (a) (1) from a class C felony to a class B felony. See Public Acts 2002, No. 02-138, § 7.

See General Statutes § 53a-35a (6). The defendant is correct.

The defendant has raised his claim for the first time on appeal. "Practice Book § 43-22 provides that '[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner.'" *State* v. *Constantopolous*, 68 Conn. App. 879, 882, 793 A.2d 278, cert. denied, 260 Conn. 927, 798 A.2d 971 (2002).

"An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . The remedies available for correcting an illegal sentence include reconstructing the sentence to conform to its original intent or to the plea agreement, eliminating a sentence previously imposed for a vacated conviction or resentencing a defendant if it is determined that the original sentence was illegal." (Citations omitted; internal quotation marks omitted.) Id. Because the defendant was sentenced illegally, we remand the case to the trial court for resentencing.

The judgment is reversed only as to the sentence on the conviction of three counts of having violated § 53a-71 (a) (1) and the case is remanded for resentencing according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.