STATE OF CONNECTICUT *v.* THOMAS W.[1]
(AC 29003)

Flynn, C. J., and Lavine and Hennessy, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 13—officially released June 30, 2009

*William B. Westcott*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Thomas W., appeals from the judgment of the trial court, rendered after a jury trial, convicting him of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2),[2] two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1)[3] and one count of sexual

---

[2] General Statutes § 53-21 (a) provides in relevant part that "[a]ny person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the . . . morals of such child are likely to be impaired . . . shall be guilty of a class C felony . . . ."

assault in the fourth degree in violation of General Statutes (Rev. to 2003) § 53a-73a (a) (1) (A).[4] On appeal, the defendant claims that (1) § 53-21 (a) (1) is void for vagueness, (2) there was insufficient evidence to convict him of the four counts of which he was convicted and (3) the court made improper remarks to the jury, placing the burden of proof on him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In November or December, 2003, when the victim was six years old, the defendant, who is her great uncle, arrived at the residence that the victim shared with her mother, brother and sister, to have the victim's mother braid his hair. The mother testified that the defendant is her uncle. The victim testified that the defendant visited their residence every once in a while and that she thought that he was her uncle, not her mother's uncle. When the investigating detective initially contacted the defendant regarding the incident, the defendant did not recognize the victim's name.

When the defendant arrived at the victim's residence, the victim's mother was at work, and only the victim and her ten year old brother were present. The children were watching television in either the living room or their mother's bedroom. The victim testified that, while watching cartoons, she heard noises in the kitchen that she could not describe but stated that they were not "pots and pans noises." She looked toward the kitchen and saw the defendant rubbing his penis, with his pants pulled down. The victim stated that she observed him do this for approximately two minutes.

Immediately or shortly afterward, the victim went to the bathroom. She testified that the defendant cracked

[4] General Statutes (Rev. to 2003) § 53a-73a (a) provides in relevant part that "[a] person is guilty of sexual assault in the fourth degree when: (1) [s]uch person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

the bathroom door open and looked inside so that the victim was able to see his face. She stated that he looked at her while she was "using the bathroom."

The victim's mother arrived home while the victim was in the bathroom, or shortly afterward. She braided the defendant's hair, and the defendant spent the night at their home. The victim did not want to sleep alone in the room she shared with her sister, who was at a friend's house, so she slept with her mother in the mother's bed. The victim went to bed wearing her nightclothes. Sometime during the night, the defendant came into the bedroom of the victim's mother and touched the victim's buttocks underneath her nightclothes. The victim testified that she awoke when she felt the defendant touching her buttocks and that when she looked at him, he pretended to be searching for something near the bed. He did not say anything to her. The victim unsuccessfully tried to awaken her mother, who was a heavy sleeper. The victim reported the incident to her mother and one of her mother's relatives sometime thereafter. Further relevant facts will be set forth as necessary.

I

The defendant's first claim is that § 53-21 (a) (1) is void for vagueness. The defendant claims that the so-called "situation" prong[5] of the statute pursuant to which he was convicted is vague as applied to the circumstances of his case and void for vagueness on its face. The defendant failed to raise this claim at trial and seeks to prevail pursuant to *State* v. *Golding*, 213

[5] In addition to the conduct for which the defendant was charged; see footnote 3; § 53-21 (a) (1) also prohibits doing any *act* likely to impair the health or morals of any such child. See *State* v. *Aziegbemi*, 111 Conn. App. 259, 267, 959 A.2d 1 (2008) (distinguishing between "situation" and "act" prongs of statute), cert. denied, 290 Conn. 901, 962 A.2d 128 (2008).

Conn. 233, 239–40, 567 A.2d 823 (1989).[6] We will review his claim under *Golding* because the record is adequate, and a claim that a statute is unconstitutionally vague implicates the defendant's fundamental due process right to fair warning. See *State* v. *Coleman*, 83 Conn. App. 672, 676–77, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005). We conclude, however, that there was no constitutional violation because the statute is not vague as applied to the circumstances of the present case.[7]

We begin by setting forth the relevant legal principles. "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Citation omitted; internal quotation marks omitted.) *State* v. *Stuart*, 113 Conn. App. 541, 560–61, 967 A.2d 532 (2009). "A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute."

---

[6] The defendant may prevail under *Golding* if "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 710, 905 A.2d 24 (2006).

[7] We consequently do not address the defendant's attack on the facial validity of the statute. See *State* v. *Indrisano*, 228 Conn. 795, 804, 640 A.2d 986 (1994) (defendant may not challenge facial validity of statute when his conduct unmistakably falls within statute's core meaning of prohibited conduct).

*State* v. *Indrisano*, 228 Conn. 795, 804, 640 A.2d 986 (1994).

"[T]he defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement. . . . The proper test for determining [whether] a statute is vague as applied is whether a reasonable person would have anticipated that the statute would apply to his or her particular conduct. . . . The test is objectively applied to the actor's conduct and judged by a reasonable person's reading of the statute . . . . [O]ur fundamental inquiry is whether a person of ordinary intelligence would comprehend that the defendant's acts were prohibited . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Stuart*, supra, 113 Conn. App. 562. "References to judicial opinions involving the statute . . . may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 710, 905 A.2d 24 (2006).

"Our case law has interpreted § 53-21 [(a) (1)] as comprising two distinct parts and criminalizing two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. . . . Thus, the first part of § 53-21 [(a) (1)] prohibits the creation of situations detrimental to a child's welfare . . . ." (Internal quotation marks omitted.) Id., 713. "Under the 'situation' portion of § 53-21 [(a) (1)], the state . . . must prove that the defendant wilfully created a situation that posed a

risk to the child's health or morals." (Internal quotation marks omitted.) Id.

The defendant argues that a fair reading of the statute reasonably would not have alerted him to the fact that masturbating where the six year old victim could observe him and watching her while she was using the bathroom was prohibited conduct. We are not persuaded.

First, we address the kitchen incident.[8] We conclude that the statutory language and the authoritative judicial gloss afforded the defendant sufficient notice that masturbating in the kitchen where a six year old could observe him was prohibited by § 53-21 (a) (1). The statute prohibits wilfully creating a situation in which the morals of a minor are likely to be impaired. In *State* v. *Cutro*, 37 Conn. App. 534, 536, 539–40, 657 A.2d 239 (1995), the defendant created a situation likely to impair the morals of a minor pursuant to § 53-21 (a) (1) when a fourteen year old victim and her seventeen year old sister observed him masturbating inside his car in a parking lot of a shopping mall, parked three cars away from theirs. The victim in *Cutro* merely saw the defendant shaking and rocking back and forth with his mouth open; she did not observe the defendant's genitals and did not know what he was doing. Id., 536. In *State* v. *Erzen*, 29 Conn. App. 591, 592, 617 A.2d 177 (1992), the defendant approached two children in the street, asked them to help him look for his lost puppy and then exposed himself and tapped or patted his penis.

We are not persuaded by the defendant's attempts to distinguish his case from *Erzen* and *Cutro* by arguing

---

[8] The defendant was charged with violating § 53-21 (a) (1) in the second and third counts of the amended information, which related to the kitchen incident and the bathroom incident. Counts one and four stem from the defendant's conduct in the bedroom of the victim's mother during the night, i.e., the bedroom incident.

that there was no evidence that his penis was erect or that he ejaculated, that he did not address or "flash" the victim and that he might have been unaware that she saw him masturbate. The statute in question requires only that the defendant wilfully causes or permits a child to be placed in a situation *likely* to impair his or her morals. The defendant was not, as he argues, merely touching his penis in a private place. He was not in his home but was in the common area of a home occupied by three children. He pulled his pants down and masturbated where the six year old victim and her ten year old brother only had to look away from the television set to observe him. He also made sounds that caused the victim to look toward the kitchen. On the basis of the statutory language and the case law discussed previously, we conclude that a person of ordinary intelligence would comprehend that masturbating where he or she can be observed by children is prohibited by § 53-21 (a) (1).

The defendant next argues that he lacked sufficient notice that watching the victim while she was using the bathroom would be prohibited under § 53-21 (a) (1). The defendant argues that his conduct consisted merely of looking at the victim and that looking at a child is not conduct prohibited by the statute. He emphasizes that he was a member of the victim's extended family and that there was no evidence regarding the length of his observation of the victim or whether the victim was urinating, bathing or engaging in any private activity.

We first note that the defendant is speculating about the jury's factual findings and essentially arguing that the jury found that he merely opened the door a small amount and innocently looked into the bathroom. It is undisputed, however, that "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from

the evidence presented." (Internal quotation marks omitted.) *State* v. *Smith*, 110 Conn. App. 70, 75, 954 A.2d 202, cert. denied, 289 Conn. 954, 961 A.2d 422 (2008). By finding the defendant guilty on this count, the jury concluded that he created or placed the victim in a situation in which her morals were likely to be impaired. We therefore are not convinced that the jury inferred from the evidence that the defendant's decision to peek into the bathroom was innocent. The victim, who was six years old at the time of the incident and nine years old at the time of the trial, did not specify what she was doing but merely testified that she was "using the bathroom." The door to the bathroom was closed, and the defendant cracked it open and looked inside closely enough so that the victim was able to observe his face. The jury was free to consider the fact that the bathroom of someone's home is a place in which that person has a reasonable expectation of privacy. Moreover, although it is unclear from the evidence what the victim was doing and whether she was exposed, a reasonable person knows that when another is in the bathroom behind the closed door, there is a high likelihood that he or she is fully or partially unclothed and engaged in a private act. The defendant should have reasonably expected that the victim would be at least partially undressed when he cracked open the door. There was no evidence that the defendant watched the victim for an innocent purpose, such as to supervise her. There also was no evidence that the defendant briefly looked inside the bathroom to check whether anyone was inside. The jury also could have considered the facts that the victim was disturbed by the incident enough to report it to her mother and that the defendant did not say anything to her while he was watching her. The facts that the defendant was not close to the victim, did not recognize her name when the police contacted him and that she was unsure how

they were related also were in evidence. Moreover, the jury was free to consider that the bathroom incident occurred after the defendant masturbated in the kitchen in full view of the victim, as well as that he proceeded to touch the victim's private parts while she was asleep that night. Viewing all the evidence in context, the jury, therefore, could have reasonably inferred that the defendant's observing of the victim amounted to peeping at a six year old child for voyeuristic or sexual gratification purposes.

We acknowledge that determining whether the defendant had sufficient notice that his conduct as such was prohibited by § 53-21 (a) (1) is a close question, principally because we are not aware of any cases in which our courts have held that the same or similar conduct amounted to creating a situation likely to impair the morals of a child. The state refers us to cases holding that photographing nude or seminude children is a violation of § 53-21. See *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976) (defendant took nude and seminude photographs of victim after promising to give her "C" in class); see also *State* v. *Palangio*, 24 Conn. App. 300, 588 A.2d 644 (defendant created situation that impaired victims' morals when he took numerous photographs of them in various stages of undress), cert. denied, 218 Conn. 911, 591 A.2d 813 (1991); *State* v. *Manluccia*, 2 Conn. App. 333, 478 A.2d 1035 (defendant took numerous photographs of nude child and paid child for posing), cert. denied, 194 Conn. 806, 482 A.2d 711 (1984). We find these cases applicable only to a certain extent. Although they share an element of voyeurism, the bathroom incident differs from the situations in these cases because it did not involve preserving a child's image for personal use or distribution.

We nonetheless conclude that the statutory language of § 53-21 (a) (1) sufficiently put the defendant on notice that his conduct would be prohibited. We are fully

aware that precisely defining "morals" is an inherently difficult task because what constitutes societal standards can be amorphous, prone to widely varying views and subject to changing mores. Our courts have asked jurors, when considering the likelihood of the impairment of morals under § 53-21, to decide whether a defendant acted "in accordance with the principles and precepts that are commonly accepted among us as right and decent." *State* v. *Barksdale*, 79 Conn. App. 126, 137, 829 A.2d 911 (2003) (jury instructions). Our Supreme Court, in discussing an unrelated issue of wrongfulness under General Statutes § 53a-13 (a), has noted that the proscriptions of the criminal law generally reflect the moral prohibitions of the social order. *State* v. *Cole*, 254 Conn. 88, 103, 755 A.2d 202 (2000). We also take notice of the following definitions of the term "moral": "1. Pertaining or relating to the conscience or moral sense or to the general principles of right conduct. 2. Cognizable or enforceable only by . . . the principles of right conduct . . . ." Black's Law Dictionary (5th Ed. 1979). We conclude that the concept of morals is not so ephemeral that a reasonable person would fail to understand that the defendant's conduct was not "right or decent" and that it was likely to impair the victim's morals. Despite the varying views on morality, the fair reading of the statute would put a reasonable person on notice that opening the door of a bathroom to peep at a six year old child for voyeuristic purposes or sexual gratification, especially when the child is aware of being watched, crosses the line from lawful into unlawful conduct. Compare *State* v. *Scruggs*, supra, 279 Conn. 719 (state did not refer to any statutes, published or unpublished opinions, newspaper reports, television programs or other public information that would alert defendant that living conditions in her apartment posed unlawful risk to mental health of child under § 53-21). "The general purpose of § 53-21 is to

protect the physical and psychological well-being of children from the potentially harmful conduct of adults." (Internal quotation marks omitted.) *State* v. *Fagan*, 92 Conn. App. 44, 52, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005). "[T]he phrase 'morals likely to be impaired' expresses the legislature's intent to prohibit conduct threatening the morality of children . . . ." *State* v. *Payne*, 240 Conn. 766, 772, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). It is well within reason to conclude that the act of peeping at one's six year old grandniece for voyeuristic purposes or sexual gratification, especially after masturbating in front of her and before touching her private parts, threatened her morality.

We conclude that § 53-21 (a) (1) is not unconstitutionally void for vagueness as applied to the defendant's conduct in both instances.

## II

The defendant next claims that there was insufficient evidence presented at trial to support his conviction. The defendant argues that the evidence regarding the "bathroom incident" shows at most that he looked into a room in which a child was present and that, as such, it is insufficient to establish that he created a situation likely to impair the morals of a child. The defendant argues that the evidence regarding the kitchen incident does not demonstrate that he deliberately created a situation likely to impair the morals of a child, but that it merely shows that he was "negligent in assuring his privacy before touching himself." The defendant also argues that the evidence regarding the bedroom incident demonstrated only that he touched the victim's buttocks and that it is insufficient to satisfy the elements of § 53-21 (a) (2). See footnote 2; see also General Statutes (Rev. to 2003) § 53a-73a (a) (1) (A); footnote 4.

In addition to the facts outlined previously, the following facts are relevant. After the victim reported the incidents to her mother, the mother took her to the Yale Child Sexual Abuse Clinic. An employee spoke to the victim and showed her an anatomical drawing of a male body. The victim drew a circle around the penis, indicating that that was the part of the defendant's body she saw him rubbing in the kitchen. She then was shown another anatomical drawing, and she circled the buttocks area, indicating that that was where the defendant touched her during the night. The drawings were introduced as exhibits at trial. The victim's mother also testified as a constancy of accusation witness.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proved and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Aziegbemi*, 111 Conn. App. 259, 263–64, 959 A.2d 1, cert. denied, 290 Conn. 901, 962 A.2d 128 (2008).

We first address the kitchen incident. The defendant, in addition to repeating his vagueness claim addressed

previously, primarily argues that the evidence does not prove beyond a reasonable doubt that he wilfully or deliberately created a situation likely to impair the morals of a child. "[I]t is not necessary [however], to support a conviction under § 53-21, that the [accused] be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute. Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Internal quotation marks omitted.) Id., 265; see also *State* v. *Cutro*, supra, 37 Conn. App. 539.

In *State* v. *Cutro*, supra, 37 Conn. App. 539–40, this court concluded that the jury reasonably could have found that the defendant acted wilfully and in reckless disregard of the consequences when he sat in his car and masturbated in the parking lot of a shopping mall. We are persuaded that the evidence that the defendant pulled his pants down in the kitchen of the victim's residence and masturbated where she and her ten year old brother could see him likewise demonstrates a reckless disregard of the consequences of that act. We therefore conclude that the jury reasonably could have found the defendant guilty beyond a reasonable doubt under § 53-21 (a) (1).

We next address the bathroom incident. We have discussed already the evidence relevant to this count when we reviewed the defendant's void for vagueness claim in part I. The defendant here makes a similar argument about the jury's factual findings, namely, he argues that the evidence that he looked at a child in the bathroom is not sufficient to find him guilty beyond a reasonable doubt under § 53-21 (a) (1). We are not persuaded.

The only evidence regarding the bathroom incident was the testimony of the victim, recounted previously, and the constancy of accusation testimony from the victim's mother. To find a defendant guilty under § 53-21 (a) (1), the state must establish beyond a reasonable doubt that the defendant wilfully or unlawfully caused or permitted any child under the age of sixteen years to be placed in such a situation that the morals of such child are likely to be impaired. The evidence shows that the defendant, who did not have a close relationship with the victim, opened the closed door of a bathroom and silently watched her while she was using it. The jury was free to consider this fact in context and in combination with other proven facts, including evidence showing that the defendant did this after masturbating in front of the victim and before he proceeded to touch her buttocks while she was sleeping clothed next to her mother. The jury also was free to draw reasonable inferences and conclude that the defendant watched the victim for purely voyeuristic or sexual gratification purposes. Although we do not find the bathroom incident to be as clear cut as the kitchen incident, we conclude that the cumulative force of this evidence establishes beyond a reasonable doubt that the defendant created a situation likely to impair the victim's morals when he watched her using the bathroom.

Last, we address the bedroom incident. The defendant was convicted of counts one and four on the basis of the victim's testimony that he entered the room where she was sleeping next to her mother, put his hands inside her nightclothes and touched her bare buttocks. The defendant argues that the evidence shows no indication of fondling or manipulation and therefore does not satisfy the required element that the touching be of a sexual nature.

On the first count, the defendant was found guilty under § 53-21 (a), which provides that "[a]ny person who . . . (2) has contact with the intimate parts, as defined in [General Statutes §] 53a-65, of a child under the age of sixteen years . . . *in a sexual and indecent manner* likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ." (Emphasis added.) General Statutes § 53-21 (a). Section 53a-65 defines "intimate parts" as specifically including buttocks. This court has held that "touching" under this statutory provision means "a touching or meeting" and that the statute provides fair warning that a single touching constitutes a violation. *State* v. *Antonio A.*, 90 Conn. App. 286, 294, 878 A.2d 358, cert. denied, 275 Conn. 926, 883 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006). Evidence of fondling or manipulation therefore was not necessary. We further conclude that the jury, on the basis of the evidence presented, legally and reasonably could have concluded that the contact occurred in a sexual and indecent manner. The jury was free to draw reasonable inferences from the evidence presented. The defendant entered the bedroom at night while the victim was asleep and placed his hands under her nightclothes to touch her bare buttocks. He pretended to be searching for something when she awoke and did not offer any explanation for his behavior. There is nothing in the record to support an inference that the defendant touched the victim's buttocks for innocent purposes, such as hygienic or medical reasons. See *State* v. *Kulmac*, 230 Conn. 43, 65, 644 A.2d 887 (1994). We therefore conclude that the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt under § 53-21 (a) (2).

On the fourth count, the jury found the defendant guilty under General Statutes (Rev. to 2003) § 53a-73a (a), which provides in relevant part that a "person is

guilty of sexual assault in the fourth degree when (1) [he] intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ." The term "[s]exual contact" for the purposes of § 53a-73a is defined in relevant part as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ." General Statutes § 53a-65 (3).

The defendant argues that there was no evidence showing that the contact occurred for the purpose of his sexual gratification because the victim did not testify as to how long the defendant touched her, how much of the defendant's hand touched her or the particular location of the touch. We are not persuaded by the defendant's argument. The victim testified that the defendant placed his hands underneath her nightclothes and touched her buttocks. In *State* v. *Eric T.*, 8 Conn. App. 607, 609, 513 A.2d 1273 (1986), the jury found that the defendant placed his hands on one victim's chest and buttocks and reached between another victim's legs, grabbing her genital area. The defendant in that case argued that there was no evidence that the contact was for his personal sexual gratification because he was trying to win a bet, and he did not touch the victims' bare skin. Id., 613. This court held that other evidence, such as the defendant's boasting to others and the comments he made to the victims telling them that they had beautiful bodies, was sufficient to prove that the touching was for his sexual gratification. Id., 614. The court also noted that the defendant's choice of where to touch the victims was unquestionably. sexual in nature. Id. In the present case, the jury considered evidence that the defendant came into the bedroom at night, touched the victim's buttocks and pretended to be looking for something when she awoke. He lifted her nightclothes to access the area of her body that is

unquestionably sexual in nature and offered no explanation for his conduct. Again, the jury is free to draw reasonable inferences from the evidence. We conclude that there was sufficient evidence that the defendant had contact with the victim's intimate parts for sexual gratification and that the jury therefore reasonably could have concluded beyond a reasonable doubt that he was guilty under General Statutes (Rev. to 2003) § 53a-73a (a) (1) (A).

We conclude that there was sufficient evidence admitted at trial to support the defendant's conviction of all of the charges.

### III

The defendant's final claim on appeal is that the court improperly diluted the state's burden of proof and placed the burden of proof on the defendant by telling the jurors that they must decide whether he was "innocent or guilty" of the crimes for which he was charged. We decline to review this claim because we conclude that the defendant waived it.

The following additional facts are relevant to our consideration of the defendant's claim. On November 16, 2008, the court gave preliminary instructions to the jurors, informing them that they could not make a final decision about whether the defendant is innocent or guilty of a particular charge until they heard the court's final instructions. The court also stated that the jurors should only decide innocence or guilt on the basis of what they heard in the courtroom.[9]

After the court's preliminary instructions, defense counsel objected to the court's reference to the jury

[9] We note that these are isolated instances and that the court also repeatedly stated that the defendant is presumed to be innocent and that "the defendant does not have to prove that he's innocent." The court also stated that the burden of proof is on the state to prove beyond a reasonable doubt the elements of the crimes charged.

deciding whether the defendant was guilty or innocent because the defendant is cloaked with the presumption of innocence. Defense counsel asked the court to instruct the jury that it had to decide whether the defendant was guilty or not guilty. The court stated that it would instruct the jury on the presumption of innocence on the following morning. Defense counsel stated: "Yes, Your Honor. Thank you." On the following morning, the court instructed the jury on the presumption of innocence, and defense counsel took no exceptions.

During its final charge to the jury, the court again stated that it was the jury's job "to decide what the facts are and whether the defendant is innocent or guilty of the crimes with which he has been charged," that the jury must "reach the final conclusion as to the guilt or innocence of the accused," and that the jury is "to find the fact of guilt or innocence of the accused."[10] Before it gave the jury the final charge, the court stated on the record that it had held a charging conference in chambers prior to the closing arguments where it submitted copies of its charge to counsel. The court noted that defense counsel had asked for an "identification instruction" and "a delay in reporting advisement." The court asked counsel if they had any objections and whether there was anything they wanted to add, and both counsel replied in the negative.

First, we address the claim regarding the court's remarks during the preliminary instructions. Defense counsel objected to those remarks; therefore, the defendant's claim with respect to them is preserved for appellate review. We conclude, however, that the defendant waived this claim on the following morning when his counsel agreed to the court's clarification regarding the

[10] We note again that the court also extensively instructed the jurors regarding the presumption of innocence and the state's burden of proof during the final charge.

presumption of innocence. See *State* v. *Fabricatore*, 281 Conn. 469, 481, 915 A.2d 872 (2007) (defendant waived claim when he did not object or take exception and explained that he was satisfied with instruction); *State* v. *Duncan*, 96 Conn. App. 533, 558, 560, 901 A.2d 687 (2006) (claim waived when defense counsel, upon reviewing corrected charge, failed to object to and voiced satisfaction with it), cert. denied, 280 Conn. 912, 908 A.2d 540 (2006). In the present case, when defense counsel objected to the court's reference to the "guilt or innocence" of the defendant, the court stated that it would instruct the jurors on the presumption of innocence and asked defense counsel if that was sufficient. Defense counsel stated that it was and thanked the court. On the following morning, when the court instructed the jurors on the presumption of innocence, defense counsel did not object or take exception to those instructions. We conclude that the defendant waived his claim regarding the court's preliminary instructions.

The defendant admits that he did not object to the court's remarks during its final charge to the jury and is asking for reversal under *State* v. *Golding*, supra, 213 Conn. 239–40. See footnote 6. Our Supreme Court, however, has held that "when a right has been affirmatively waived at trial, we generally do not afford review under . . . *Golding* . . . . In *State* v. *Fabricatore*, [supra, 281 Conn. 482], we concluded that unpreserved, waived claims, fail under the third prong of *Golding* . . . . [W]aiver is the intentional relinquishment or abandonment of a known right. . . . The mechanism by which a right may be waived, however, varies according to the right at stake. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal." (Citations omitted; internal

quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009).

In the present case, the court stated on the record that both counsel received and reviewed a copy of the court's final charge to the jury when they met in chambers. The court noted, on the record, the specific objections that defense counsel had raised in chambers and asked counsel whether they had any further objections. Defense counsel stated, on the record, that he had no further objections to the final charge. The defendant therefore consented to and expressed satisfaction with the final charge, and we conclude that he waived any challenge to it on appeal. See *State* v. *Fabricatore*, supra, 281 Conn. 481; *State* v. *Velez*, 113 Conn. App. 347, 359, 966 A.2d 743 (defense counsel's expression of satisfaction with court's jury instruction constituted waiver of defendant's constitutional rights regarding proper jury instruction), cert. denied, 291 Conn. 917, 970 A.2d 729 (2009); see also *State* v. *Duncan*, supra, 96 Conn. App. 560. We therefore conclude that the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.